# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-4060NI

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | On Appeal from the United |
| v. | * | States District Court |
| | * | for the Northern District of |
| | * | Iowa. |
| Rene Madrid, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: May 10, 2000

Filed: September 14, 2000

_____

Before RICHARD S. ARNOLD and HEANEY, Circuit Judges, and SIPPEL,[1]
  District Judge.

_____

RICHARD S. ARNOLD, Circuit Judge.

The defendant, Rene Madrid, went to trial on two drug charges: (1) possessing with the intent to distribute and aiding and abetting the distribution of cocaine and methamphetamine on or about August 9, 1996; and (2) conspiracy to possess with the intent to distribute methamphetamine and cocaine between about January 1, 1996, and August 9, 1996. Mr. Madrid was acquitted of the first charge, but was convicted of the

---

[1]The Hon. Rodney W. Sippel, United States District Judge for the Eastern and Western Districts of Missouri, sitting by designation.

conspiracy charge (only as it related to methamphetamine). He was sentenced to ten years and one month (121 months) in prison. He argues that the District Court[2] (1) erred by not granting his motion for a judgment of acquittal on the conspiracy charge; (2) abused its discretion by allowing the government to introduce drugs that a co-conspirator, Arturo Martinez,[3] sold an undercover agent before August 9, 1996; (3) erred by depending solely on the methamphetamine related to the acquitted August 9 transaction when calculating his base-offense level; and (4) erred in determining that the drugs from the August 9 transaction were part of relevant conduct. We affirm.

## I.

Arturo Martinez testified that he began obtaining user quantities of "mostly cocaine" and "sometimes methamphetamine" from the defendant beginning in January of 1996. Sometimes Mr. Martinez paid the defendant in cash, and sometimes the defendant "fronted" the drugs to Mr. Martinez until Mr. Martinez could sell the drugs and then pay the defendant from the proceeds. In July of 1996, Mr. Martinez sold cocaine and methamphetamine to undercover DEA agent Greg Brugman and a government informant. The defendant supplied Mr. Martinez with some of the drugs for these transactions.

On August 9, 1996, Agent Brugman (known to Mr. Martinez as "Gus") called Mr. Martinez, who agreed to sell Agent Brugman two pounds of methamphetamine and two pounds of cocaine. Mr. Martinez already had one pound of methamphetamine, which "some other people" had left for him in a dumpster by his home on the night of

---

[2]The Hon. Michael J. Melloy, Chief Judge, United States District Court for the Northern District of Iowa.

[3]Arturo Martinez and Jose Martinez are both named co-conspirators. Arturo Martinez will be referred to as "Mr. Martinez," and Jose Martinez will be referred to by his full name.

August 8, 1996. Martinez got in touch with the defendant and Jose Martinez, another co-conspirator, to help him accumulate the large quantities of drugs requested by Agent Brugman. Martinez testified, "I called Rene Madrid . . .. I asked him if he got the stuff ready and he was ready to go . . .. He said yeah; to come over, so I went to his house." Tr. 2 at 115. When Mr. Martinez arrived at the defendant's home to pick up a pound of methamphetamine, the defendant asked Mr. Martinez to come back later. Mr. Martinez left the defendant's apartment and met Agent Brugman in a store parking lot in Tama, Iowa, where Mr. Martinez informed Agent Brugman that he only had one pound of methamphetamine and was waiting for the other pound of methamphetamine and two pounds of cocaine. Mr. Martinez left the parking lot and went to his apartment to call Jose Martinez to tell him to hurry up, and then returned to the defendant's apartment, where the defendant gave Mr. Martinez a pound of methamphetamine and five ounces of cocaine.

Mr. Martinez testified about the events of August 9, 1996:

A.      Well, Mr. Madrid got the methamphetamine ready and the ounces of coke. He jumped in the car with me.

Q.      Did he have the drugs in his possession when he got in your car?

A.      Yeah.

Q.      Do you know what he did with the drugs?

A.      Well, he put it under the seat of the car.

Q.      And was he sitting in the front passenger seat?

A.      Yes.

Q.      Were the drugs then put under the front passenger seat in your car?

A.   Yeah.  Put it under the seat and we went back to see Mr. Brugman.

Q.   And so then you went back with Mr. Madrid to see Mr. Brugman – Agent Brugman?

A.   Yeah.

Q.   What happened when you got there?

A.   Well, I talked to Mr. Brugman – Agent Brugman and ask him to wait a little longer because I – I was still – I still waiting for the cocaine and he said he was – it was okay; that he can wait a little more.

. . .

A.   Well, he [Brugman] asked why we got the air-conditioning running and I say, "Well, it's too hot," and Mr. Madrid told him that because when it's too hot, the methamphetamine – it will evaporate.

Q.   When you obtained the methamphetamine and the cocaine from Mr. Madrid, did you want him to come with you to meet with Agent Brugman?

A.   No, no, not really.  I wanted to go by myself.

Q.   So whose idea was it that Mr. Madrid would come with you?

A.   Well, he want to come because he say it was too much money involved in the deal and he don't want me to get a rip off or maybe he don't trust me with all the money that was involved.

Q.   After you met with Agent Brugman the second time, then what did you do?

A.     We talked to him for a couple minutes.  I let Mr. Madrid talk to him so he gave me his opinion about – about Gus; about Agent Brugman.

Q.     And did Mr. Madrid give you his opinion about Agent Brugman?

A.     Yeah.  He say he think he was okay.  We was going to make a good deal.

Q.     When did he tell you that?

A.     When – okay.  We get – after we talk to Mr. Brugman a couple minutes, we went back to my apartment to meet with Jose Martinez.

Q.     Okay.  What happened when you got back to your apartment?

A.     We park in front of my house and I called – I call Jose Martinez again.

Q.     And what happened?

A.     And we meet him there.

Tr. 2 at 121-23.

Mr. Madrid, Mr. Martinez, and the cocaine supplier all went to the store parking lot where Agent Brugman was waiting to purchase the controlled substances.  Agent Brugman asked the defendant to go to the front of the store to act as a lookout, the defendant complied, and Mr. Martinez and Agent Brugman then exchanged money and drugs.  Agent Brugman placed Mr. Martinez under arrest, at which time Mr. Martinez told the police that the methamphetamine was not his, but belonged to the defendant.  After a brief chase, the defendant and the cocaine supplier were apprehended and arrested.

The defendant, Mr. Martinez, and four others were charged in a nine-count second superseding indictment on December 11, 1996, for drug and firearm offenses. The defendant proceeded to a jury trial on the following two counts: (1) on or about August 9, 1996, the defendant did knowingly and unlawfully possess with the intent to distribute and aid and abet the distribution of approximately 22 ounces of cocaine and approximately two pounds of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A) and 18 U.S.C. § 2; and (2) between about January 1, 1996, and August 9, 1996, the defendant was involved in a conspiracy to possess with the intent to distribute 100 grams or more of pure methamphetamine and 1000 grams or more of a substance containing methamphetamine, and an unidentified quantity of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846.

At trial, the government introduced in evidence approximately 102 grams of cocaine and approximately 99 grams of methamphetamine which Mr. Martinez sold Agent Brugman and a government informant in July 1996. The defendant objected to this evidence, contending that the government failed to show a connection between the drugs and himself, that the drugs were irrelevant, and that unfair prejudice outweighed any probative value in admitting the evidence. The Court permitted the drugs as evidence of a conspiracy between Mr. Madrid and Mr. Martinez.

At the close of the government's case, the defendant moved for acquittal pursuant to Rule 29(a) of the Federal Rules of Criminal Procedure. The District Court denied the defendant's motion on the possession and aiding and abetting charge. However, the Court reserved its ruling as to the conspiracy charge. The defendant renewed his motion of acquittal at the close of all the evidence, which the Court denied.

The jury acquitted the defendant of possessing cocaine and methamphetamine with the intent to distribute, and of aiding and abetting the distribution of these substances. The jury convicted the defendant of conspiracy to distribute methamphetamine, but not cocaine.

Mr. Madrid was sentenced on November 9, 1999. The District Court calculated the defendant's base offense level using the amount of pure methamphetamine found in one of the pounds of methamphetamine involved in the August 9, 1996, transaction. No other drugs were considered, because the inclusion of any of the other drugs involved in the conspiracy would not have affected the determination of the base offense level. The Court determined that an offense level of 32 was appropriate. Based on a Criminal History Category I, a sentencing range of 121 to 151 months was applicable, and the District Court sentenced the defendant to 121 months' imprisonment, three years' supervised release, a $100 special assessment, and a $100 fine.

II.

The defendant first argues that the District Court erred when it did not grant his motion for judgment of acquittal at the end of the government's case. We disagree. A defendant challenging the sufficiency of the evidence in a conspiracy case has a heavy burden, as proof of the crime may rest on indirect or circumstantial evidence. United States v. Hulse, 198 F.3d 665, 668 (8th Cir. 1999). Moreover, in reviewing the District Court's denial of the motion for acquittal, we view the evidence in the light most favorable to the verdict and will reverse only if no reasonable jury could have found beyond a reasonable doubt that the defendant is guilty of the offense charged. Id. To be guilty of conspiracy, a defendant must be shown to have knowingly entered into an agreement with at least one other person to violate the law. See United States v. Holloway, 128 F.3d 1254, 1257 (8th Cir.1997).

There is sufficient evidence to support a jury finding that the defendant entered into an agreement with Mr. Martinez to distribute methamphetamine. Mr. Martinez began receiving ounce quantities of "mostly" cocaine from Mr. Madrid in the spring of 1996, which were often "fronted" to him by Mr. Madrid until Mr. Martinez sold the drugs to pay Mr. Madrid. Mr. Martinez testified that he and Mr. Madrid repeatedly

exchanged cash and drugs. Furthermore, Mr. Martinez arranged with the defendant to receive methamphetamine for the purpose of completing the August 9 transaction with Agent Brugman, the defendant insisted on going with Mr. Martinez to the location of the drug sale to assure that the transaction was effectively carried out, Mr. Madrid even checked out Agent Brugman ("Gus") to see if he was safe, and Mr. Madrid spoke with Agent Brugman about the methamphetamine. The government was required to prove that Mr. Madrid was part of an agreement to distribute methamphetamine, and, on this record, a reasonable jury could easily have been convinced of this beyond a reasonable doubt.

The defendant next argues that the District Court abused its discretion when it allowed the government to introduce all of the drugs that Mr. Martinez sold Agent Brugman in July of 1996, because the drugs were irrelevant and prejudicial. The District Court did not abuse its discretion. These drugs were sold within a relatively short time frame before the August 9 transaction, and Mr. Martinez testified that some of the drugs that he sold in July 1996 came from the defendant. The drugs from these controlled buys are relevant to the crime charged, conspiracy, and are not unduly prejudicial.

Third, the defendant argues that the District Court erred when it relied solely on drugs from the acquitted August 9 transaction when calculating his base-offense level. The District Court calculated the base-offense level using the amount of pure methamphetamine found in one of the pounds involved in the August 9, 1996, transaction. The defendant contends that basing his sentence on those drugs rendered the jury's acquittal meaningless and violated his Sixth Amendment right to a jury trial. We disagree. Mr. Madrid was not acquitted of every charge, and the acquitted charge and convicted charge both included the time period of August 9, 1996. What we have here is an inconsistent verdict, where Mr. Madrid was acquitted of possession with the intent to distribute on August 9, 1996, but convicted of conspiracy to distribute methamphetamine. Juries can return inconsistent verdicts. "A jury may acquit a

defendant as to one or more charges for any number of reasons, including an inclination to be merciful, and yet come to the reasonable conclusion that the defendant was guilty of other related charges." United States v. Whatley, 133 F.3d 601, 606 (1998). Moreover, even acquitted conduct can be considered when determining a sentence under the Sentencing Guidelines, so long as that conduct has been proved, as it was here, by a preponderance of the evidence. See United States v. Watts, 117 S. Ct. 633, 638 (1997).

For similar reasons, we also reject the defendant's final argument: that the District Court erred when it relied entirely upon the August 9 transaction as relevant conduct for purposes of sentencing, because the jury determined that he was not guilty of that transaction. Mr. Madrid's involvement with the methamphetamine from the August 9 transaction was shown by a preponderance of the evidence, making the Court's determination of the proper base-offense level proper. Moreover, Mr. Madrid was convicted of the conspiracy charge as it relates to methamphetamine.

Even if the evidence of his direct participation in the August 9 transaction did not exist, the inclusion of the methamphetamine for sentencing purposes was reasonably foreseeable to Mr. Madrid as a participant in the jointly undertaken criminal activity. See U.S.S.G. § 1B1.3(a)(1)(B).

We affirm.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.