# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-1496

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Nebraska. |
| Celso Tirado, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: October 8, 2002

Filed: December 17, 2002

_____

Before BYE, LAY, and RILEY, Circuit Judges.

_____

RILEY, Circuit Judge.

Celso Tirado (Tirado) was charged with and convicted of conspiracy to distribute methamphetamine (Count I) and charged with possession of methamphetamine with intent to distribute (Count II), but was convicted of the lesser included offense of possession of methamphetamine. 21 U.S.C. §§ 841(a)(1), 846 (2000). The district court[1] sentenced Tirado to 121 months imprisonment on Count I and six months on Count II, to run concurrently. Tirado alleges the district court

_____

[1]The Honorable Warren K. Urbom, United States District Judge for the District of Nebraska.

erred in (1) denying his motion to suppress, (2) calculating the quantity of methamphetamine used for sentencing, and (3) applying the obstruction of justice enhancement. We affirm.

## I.    BACKGROUND

On August 24, 2000, Jeff and Paul Schwarz, criminal investigators with the Dawson County, Nebraska, Sheriff's Office (DCSO), used a confidential informant to make a controlled purchase of methamphetamine from Tirado and another man at a bar in Lexington, Nebraska. After the informant spent a short time in the bar, he came out with Tirado. Tirado lifted up his own shirt and appeared to try to get the informant to raise his shirt, as if looking for a hidden wire. The informant ran from Tirado, and Tirado chased him first on foot and then in his Chevy Blazer. The informant took refuge in the officers' unmarked vehicle. Tirado pursued the informant and the officers in his Blazer and cornered them in an alley. Believing they were ambushed, the officers drew their weapons and pointed them at Tirado, who then drove away.

About two months later, law enforcement officers received information that Tirado and another man had made death threats against the investigators, Jeff and Paul Schwarz, and their families. Halloween night was the rumored attack date. On the afternoon of October 31, 2000, three DCSO officers and two INS officers went to Tirado's residence to investigate the death threats and to execute a bench warrant for Tirado's arrest. When the officers arrived, Armando Quezada (Quezada) answered the door. When an INS agent asked for identification, Quezada appeared nervous, turned away and moved quickly into the trailer. Fearing that Quezada might be running out the back or retrieving a weapon, the INS agent and Jeff Schwarz followed Quezada into the trailer. Once inside, the officers noticed drug paraphernalia. Upon request by the officers, Quezada gave permission to search his bedroom, resulting in the discovery of illegal drugs.

While officers were inside the trailer, Tirado approached outside. Paul Schwarz confronted Tirado and arrested him pursuant to the bench warrant. Schwarz advised Tirado of his rights. According to the officers, Tirado gave Schwarz permission to search his bedroom. Tirado denies giving his permission.

While searching Tirado's bedroom, an officer saw a book bag hanging in the closet. The officer searched the bag and found a scale, methamphetamine, ammunition and cash. Tirado later admitted the bag was his and contained ammunition. He denied knowing the bag contained drugs or drug paraphernalia. The total methamphetamine found in Tirado's residence was 128.72 grams, which Tirado moved to suppress. The district court denied this motion.

At trial, two witnesses testified they received an additional 99.05 grams of methamphetamine from Tirado. At sentencing, the district court attributed 227.77 grams of methamphetamine to Tirado as relevant conduct to the conspiracy. In addition, the district court applied a two-level obstruction of justice enhancement for Tirado's conduct on August 24. The district court sentenced Tirado to 121 months imprisonment on Count I and a concurrent six months on Count II.

## II. DISCUSSION
### A. Motion to Suppress

We review the district court's factual findings for clear error and the conclusions of law de novo. See United States v. Wells, 223 F.3d 835, 838 (8th Cir. 2000). The district court's finding of consent to search is reviewed for clear error. United States v. Heath, 58 F.3d 1271, 1276 (8th Cir. 1995).

Tirado claims the warrantless search of his residence violated the Fourth Amendment's protection against unreasonable search and seizure, and the items found should have been suppressed. First, Tirado argues the officers unlawfully followed Quezada into the residence. Second, Tirado argues he never consented to

a search, but if he had, the officers exceeded the scope of his consent to search his bedroom when they searched his closet and a closed bag hanging in the closet. The magistrate judge[2] and the district court provided detailed and well-reasoned opinions on these issues and we affirm with little comment.

The officers went to Tirado's residence to execute a bench warrant for Tirado's arrest and to investigate death threats allegedly made by Tirado against Jeff and Paul Schwarz. These duties were carried out against the backdrop of the earlier dangerous chase involving Tirado. Viewed in light of these facts, when Quezada appeared nervous and abruptly retreated into the residence, the officers were justified in following Quezada to protect themselves. See United States v. Hill, 730 F.2d 1163, 1170 (8th Cir. 1984) ("entry into the living room to locate [the defendant] was justified to protect the officers").

The district court did not err in finding Tirado voluntarily consented to a search of his bedroom based on the credibility of the officers' testimony. See Schneckloth v. Bustamonte, 412 U.S. 218, 227 (1973) (voluntary consent to search is a fact question determined from the totality of the circumstances). As Tirado did not limit the scope of the search of his bedroom, the officers did not violate Tirado's Fourth Amendment rights by searching the bedroom closet and the bag hanging in the closet. See Florida v. Jimeno, 500 U.S. 248, 251 (1991) (because the scope of the suspect's consent to search his automobile was not limited, the search authorization "extended beyond the surfaces of the car's interior to the paper bag lying on the car's floor"); United States v. Moran, 214 F.3d 950, 951 (8th Cir. 2000) (consent to search trailer included searching a tin box on an upper shelf in a bedroom closet); United States v. Coffman, 148 F.3d 952, 953 (8th Cir. 1998) (consent to search home included searching under the defendant's bed and his pillow).

---

[2]The Honorable Thomas D. Thalken, United States Magistrate Judge for the District of Nebraska.

-4-

**B.    Sentencing Issues**

"The correct application of the guidelines is a question of law subject to de novo review," while a "factual determination of the sentencing court is reviewed under a clearly erroneous standard." United States v. Collins, 104 F.3d 143, 144 (8th Cir. 1997).

### 1.    Quantity of Methamphetamine

Tirado argues the district court erred in calculating the amount of methamphetamine used to sentence him.  First, Tirado asserts the 128 grams of methamphetamine were found in his residence during an unreasonable search and should be excluded from the sentencing calculation.  Because Tirado's Fourth Amendment rights were not violated by the search of his residence, this argument fails.

Second, Tirado notes the jury found him guilty of the lesser included offense of possession of methamphetamine rather than possession with intent to distribute, and argues use of the acquitted conduct for sentencing is unreasonable and irresponsible.  The district court found all 227.77 grams of methamphetamine were attributed to Tirado as relevant conduct to the conspiracy count.  Even if the 128 grams found in Tirado's residence were attributable to the acquitted conduct of Count II, the district court still would not have erred in using that evidence to sentence Tirado.  This Circuit allows acquitted conduct to be used for sentencing purposes if proved by a preponderance of the evidence, especially when a conspiracy charge is included.  United States v. Woods, 270 F.3d 728, 730 (8th Cir. 2001); United States v. Madrid, 224 F.3d 757, 763 (8th Cir. 2000) (inclusion of related drugs was reasonably foreseeable for participant in conspiracy).  Therefore, whether or not the district court used acquitted conduct to sentence Tirado, the district court properly calculated the amount of methamphetamine attributable to Tirado.

### 2. Obstruction of Justice Enhancement

The Sentencing Guidelines allow a two-level obstruction of justice enhancement. U.S.S.G. § 3C1.1 (2001). Qualifying conduct includes "threatening, intimidating, or otherwise unlawfully influencing a co-defendant, witness, or juror, directly or indirectly, or attempting to do so." Id. cmt. n.4(a).

Tirado argues "there is inadequate evidence to show that Tirado knew that an investigation was underway" when he confronted the informant on August 24, 2000. Tirado argues the evidence, at best, "shows that Tirado was attempting to find out if an investigation was underway." Tirado concedes the evidence comes close to suggesting Tirado knew of an impending investigation, but argues the evidence fails to establish Tirado actually knew the investigation was underway.

Our Court was confronted with a similar case in United States v. Watts, 940 F.2d 332, 333 (8th Cir. 1991), where the defendant was riding in a car when he purchased cocaine. When an unmarked vehicle following the defendant's car began flashing its headlights, the defendant threw the cocaine out the window. The defendant argued the district court erred in enhancing his sentence for obstruction of justice because he did not know he was under investigation when he threw the cocaine. We rejected that argument, believing "it is reasonable to infer [the defendant] thought he was being followed by law enforcement authorities, thought his arrest was imminent, and attempted to get rid of evidence." Id.

In Brown v. United States, 169 F.3d 531, 536 (8th Cir. 1999), the sentencing evidence established the defendant opened a confidential informant's shirt as if looking for a wire and told the informant there would be "hell to pay" from his "brothers" if anything were to happen to him. On two other occasions, the defendant warned the informant "there would be some people getting even," if anything happened to him, and "there would be hell to pay" if the informant was working for the government. Id. The district court used this evidence for an obstruction of justice

enhancement and we affirmed, believing "the nature and frequency" of the defendant's threats justified the obstruction of justice enhancement.  Id.

Like Tirado, the defendant in Brown also argued "he did not have actual knowledge of an ongoing criminal investigation," so he could not have obstructed justice.  Id.  Our court observed that willful obstruction of justice "should be reserved for the more serious case, where misconduct occurs with knowledge of an investigation, *or at least with a correct belief that an investigation is probably underway*."  Id. (quoting United States v. Oppedahl, 998 F.2d 584, 586 (8th Cir. 1993)).  We affirmed the district court's finding that the defendant "held the belief that an investigation was probably underway," because a reasonable inference from the defendant's actions was he believed an investigation was "probably underway." Id.

Tirado relies on United States v. Oppedahl, where the defendant told a major LSD customer that he would kill him if he ever "narked" on the defendant's supplier. Oppedahl, 998 F.2d at 585.  The statement was made while both were under suspicion and during the course of an investigation, but neither were cooperating with law enforcement.  After the defendant was arrested and convicted of conspiracy to distribute and possession with intent to distribute LSD, the probation officer recommended a two-level enhancement for obstruction of justice for the comments made to the drug customer.  The district court rejected the recommended enhancement and the Circuit affirmed "the ruling below that declines to apply the two-level enhancement for obstruction of justice where the defendant was unaware of the investigation when he made the culpable threat."  Id. at 586.

Factually, Tirado's case fits somewhere between Watts/Brown and Oppedahl. As in each of those cases, this court will not reverse the district court's factual determination, here finding Tirado believed an investigation was probably underway, because the determination was not clearly erroneous.

Tirado lifted up his shirt and appeared to try to get the informant to lift his shirt. It is reasonable to infer Tirado was looking for a wire, which would lead to the reasonable inference Tirado believed an investigation was "probably underway." Tirado then chased the informant on foot and with his Blazer. Because Tirado had a correct belief that an investigation was underway and threatened and intimidated the informant, the district court correctly applied the two-level obstruction of justice enhancement.

## III. CONCLUSION

For the reasons discussed above, the district court is affirmed in all respects.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.