# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 03-1128

_____

United States of America,         *
                                 *

         Appellee,          *

                                 *   Appeal from the United States

    v.                         *   District Court for the

                                 *   District of Nebraska.

Charles B. Brown,            *

                                 *

         Appellant.        *

_____

Submitted:  June 11, 2003

Filed:   October 6, 2003

_____

Before MORRIS SHEPPARD ARNOLD, HEANEY, and RILEY, Circuit Judges.

_____

RILEY, Circuit Judge.

Charles Brown (Brown) was charged with possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1) (2000).  Brown moved to suppress cocaine found in a search of his vehicle during a traffic stop.  After the district court[1] denied Brown's motion, Brown entered a conditional guilty plea,

_____

[1]The Honorable Laurie Smith Camp, United States District Judge for the District of Nebraska, adopting the report and recommendation, as modified, of the Honorable Thomas D. Thalken, United States Magistrate Judge for the District of Nebraska.

reserving the right to appeal the denial of his suppression motion. Brown now exercises that right. We affirm.

## I.    BACKGROUND

While observing traffic on Interstate 80, Sergeant Leroy Jones (Sergeant Jones) of the Nebraska State Patrol clocked a speeding green van with no front license plate. As the van passed, Sergeant Jones believed it had a rear California license plate. Sergeant Jones pursued the van, and noticed the rear license plate was from Indiana, a state requiring only a rear license plate. Sergeant Jones also observed a National Car Rental license plate holder and sticker. A license plate check came back as "not on file in Indiana." Sergeant Jones initiated a traffic stop, and the van pulled over to the shoulder. When Sergeant Jones approached the van's passenger side to contact the driver, Sergeant Jones saw a man reclining in the front passenger seat. When asked for his license and rental agreement, Brown handed Sergeant Jones a Minnesota driver's license and an Indiana registration in the name of Candace Wilson (Wilson). Sergeant Jones asked Brown to accompany him to the patrol car, and Brown complied. Sergeant Jones informed Brown the license plate was not on file in Indiana. When Sergeant Jones asked Brown who owned the vehicle, Brown gave conflicting accounts. Brown also gave conflicting accounts of his trip. Sergeant Jones informed Brown the detention had become an investigatory stop.

Sergeant Jones also approached the passenger, who identified himself as Larry Walden, Sr. (Walden). Walden's account of the trip differed from Brown's. Faced with conflicting stories, Sergeant Jones called for backup and had dispatch run Triple I background checks on Brown and Walden. After Trooper Naber arrived, Sergeant Jones received the Triple I results, which showed prior drug offenses for Brown and Walden.

Sergeant Jones gave Brown a warning for speeding and returned Brown's license and papers. Sergeant Jones then asked Brown for consent to search the van.

Brown verbally consented and signed a "Permission for Search" form. Sergeant Jones and Trooper Naber searched the van for about a half hour. Brown complained to Trooper Naber about the duration of the search, but never withdrew his permission for the search. After Sergeant Jones and Trooper Naber detected a false ceiling, Sergeant Jones requested a drug detection dog. The dog alerted immediately to the false ceiling. Once the officers gained access to the compartment above the false ceiling, they found fifty-three pounds of cocaine.

The government charged Brown with possession with intent to distribute cocaine. Brown moved to suppress the cocaine recovered during the search. The district court denied Brown's motion to suppress, finding (1) the detention was lawful, (2) Brown consented to the search, and (3) Brown never withdrew his permission to search. Brown entered a conditional guilty plea, and now appeals, claiming his detention was unconstitutional, the search was performed without his voluntary consent, and the search exceeded the scope of his consent.

## II.    DISCUSSION

We review the district court's conclusions of law de novo and its factual findings for clear error. United States v. Tirado, 313 F.3d 437, 439 (8th Cir. 2002). We review the district court's finding of consent to search for clear error. Id.

### A.    Initial Stop and Detention

An officer who observes a traffic violation, even a minor one, has probable cause to initiate a traffic stop. United States v. Linkous, 285 F.3d 716, 719 (8th Cir. 2002). Once the officer makes the traffic stop, the officer may lawfully check the driver's license and registration, ask the driver about his destination and purpose, and request that the driver sit inside the patrol car. United States v. Bloomfield, 40 F.3d 910, 915 (8th Cir. 1994) (en banc). The officer may also ask the passenger similar questions to verify the information the driver provided. Linkous, 285 F.3d at 719.

Sergeant Jones stopped Brown because he was speeding and the van's license plate was not on file in Indiana. When Sergeant Jones asked Brown for his license and rental agreement, Brown gave Sergeant Jones a Minnesota driver's license and an Indiana vehicle registration in Wilson's name. Sergeant Jones then requested Brown step over to the patrol car, where Sergeant Jones asked about Brown's trip and the van's owner. Brown gave inconsistent accounts of his trip and who owned the van. Sergeant Jones then asked Walden about the trip. Walden gave an entirely different story. Sergeant Jones had probable cause to initiate the stop, and his routine questioning of Brown and Walden was well within constitutional bounds.

In addition to having the authority to ask routine questions, Sergeant Jones had reasonable suspicion to expand the scope of the traffic stop further to detain and question Brown and Walden. See id. at 720 (stating "[a]n officer's suspicion of criminal activity may reasonably grow over the course of a traffic stop as the circumstances unfold and more suspicious facts are uncovered."); United States v. Barahona, 990 F.2d 412, 416 (8th Cir. 1993) (declaring, "if the responses of the detainee and the circumstances give rise to suspicions unrelated to the traffic offense, an officer may broaden his inquiry and satisfy those suspicions."). As the district court recognized, Brown's conflicting accounts of his trip and who owned the van authorized Sergeant Jones to ask Walden about the trip. Walden's differing story reasonably permitted Sergeant Jones to expand the scope of the stop and request background checks, which disclosed prior drug offenses for both Brown and Walden. None of these evolving actions constituted an unlawful detention.

### B.    Search of Van
#### 1.    Initial Consent
After Sergeant Jones received the results of the background checks, returned Brown's license and other papers, and issued a warning citation, Sergeant Jones asked Brown for permission to search the van. Brown verbally consented and signed a "Permission for Search" form. Brown claims he did not voluntarily consent to the

search of the van because Sergeant Jones engaged in a belittling interrogation and presented the "Permission for Search" form without informing Brown he could refuse to consent.

The Constitution guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV; see United States v. Ameling, 328 F.3d 443, 447 (8th Cir. 2003), petition for cert. filed, (U.S. Aug. 29, 2003) (No. 03-6198) (Fourth Amendment applies to the states through the Fourteenth Amendment). "A consensual search does not violate the Fourth Amendment if the consent was voluntarily given without coercion." United States v. White, 42 F.3d 457, 459 (8th Cir. 1994). In deciding whether a district court's consent determination was clearly erroneous, we must consider the following factors:

> personal characteristics of the defendant, such as age, education, intelligence, sobriety, and experience with the law; and features of the context in which the consent was given, such as the length of detention or questioning, the substance of any discussion between the defendant and police preceding the consent, whether the defendant was free to leave or was subject to restraint, and whether the defendant's contemporaneous reaction to the search was consistent with consent.

United States v. Jones, 254 F.3d 692, 696 (8th Cir. 2001).

The district court found Brown was an adult, "appeared sober and answered questions appropriately yet in a somewhat rambling manner," "was not threatened or pressured, and promises of leniency were not made," and Sergeant "Jones' tone was not unacceptably 'accusatory, aggressive, and interrupting.'" We note Brown served 5 1/2 years in the United States Air Force and holds a bachelor of science degree in engineering. Brown's assertion that he was subjected to a belittling interrogation belies our holding that Sergeant Jones's questioning was authorized and the district

court's finding that Sergeant "Jones' tone was not unacceptably 'accusatory, aggressive, and interrupting.'" The district court's finding that Brown voluntarily consented to the search was not clearly erroneous.

We also reject Brown's argument that Sergeant Jones's failure to inform Brown of his right to refuse to consent rendered his consent involuntary. See United States v. Drayton, 536 U.S. 194, 206 (2002) (acknowledging the "[Supreme] Court has rejected in specific terms the suggestion that police officers must always inform citizens of their right to refuse when seeking permission to conduct a warrantless consent search"); Schneckloth v. Bustamonte, 412 U.S. 218, 234 (1973) (holding "knowledge of a right to refuse is not a prerequisite of a voluntary consent"). The proper focus for valid consent is whether the consent was voluntary, which is a fact question based on all the circumstances. Ohio v. Robinette, 519 U.S. 33, 40 (1996) (citation omitted). The district court's finding of consent was not clearly erroneous, especially given the "Permission for Search" form specifically informed Brown of his "right to refuse to permit this search."[2]

## 2.     Scope of Consent/Probable Cause

Brown argues Sergeant Jones exceeded the scope of consent to search the van when Sergeant Jones dismantled the van's ceiling. The scope of a consensual search is measured by what "the typical reasonable person [would] have understood by the exchange between the officer and the suspect." Florida v. Jimeno, 500 U.S. 248, 251 (1991). "The scope of a search is generally defined by its expressed object," but a

---

[2]Brown signed the "Nebraska State Patrol Permission For Search" form, which states: "I, Charles Booker T Brown, do hereby voluntarily authorize L Jones 205, of the Nebraska State Patrol with such assistance as he/she deems proper, to search 1998 Ford Van IN Plates 95V9439 presently located at MM 282 I-80 EB. I am giving this written permission freely and voluntarily, without any threats or promises having been made to me, and understanding that I have the right to refuse to permit this search."

person may limit the scope of a consensual search. Id. at 251-52. The Fourth Amendment is not violated when "it is objectively reasonable for the officer to believe that the scope of the suspect's consent permitted him to open a particular container within the automobile." Id. at 249.

In addition to consensual searches, an officer may make a warrantless search of a vehicle based on probable cause. Ameling, 328 F.3d at 448; cf. United States v. Booker, 186 F.3d 1004, 1006 (8th Cir. 1999) (noting a warrantless search of a vehicle after consent has been withdrawn does not violate the Fourth Amendment if officers have probable cause). An officer has probable cause to search a vehicle "when, given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime would be found in a particular place." Ameling, 328 F.3d at 448 (citation omitted).

The signed "Permission for Search" form shows Brown consented to a search of the van without any limitations. Based on Brown's verbal and written consent, Sergeant Jones and Trooper Naber initiated a deliberate search of the van. Their search discovered a false ceiling. Although Sergeant Jones had probable cause at this point to search the contents of the false ceiling, see, e.g., United States v. Mercado, 307 F.3d 1226, 1230 (10th Cir. 2002) (holding officer's discovery of false ceiling, coupled with suspicious activity, gave probable cause to search); United States v. Martel-Martines, 988 F.2d 855, 858 (8th Cir. 1993) (finding probable cause for warrantless search of concealed compartment after detainee's evasive and inconsistent responses to routine questions, even if consent limited or withdrawn), he chose not to conduct an exhaustive search of the false ceiling. Instead, Sergeant Jones requested a drug detection dog. When the dog alerted to the false ceiling, there was a good probability the van contained drugs, which authorized a complete search of the false ceiling. See Bloomfield, 40 F.3d at 919 (holding probable cause allows warrantless search once dog alerts to drugs in car). Once the officers discovered the

false ceiling and the drug dog alerted to the false ceiling, any quarrel regarding consent and its scope was irrelevant.

Finally, Brown contends his complaints about the duration of the search showed he did not consent to the scope of the search. An expression of impatience does not establish an intent to revoke consent. United States v. Ross, 263 F.3d 844, 846 (8th Cir. 2001).[3] The district court determined Brown did not withdraw his consent, and we conclude that factual finding was not clearly erroneous. Furthermore, the discovery of the false ceiling precluded Brown from withdrawing his consent as Sergeant Jones had probable cause to search, see Martel-Martines, 988 F.2d at 858, or reasonable suspicion to detain Brown until the drug detection dog arrived, see White, 42 F.3d at 460 (80-minute detention to wait for drug dog not unreasonable). Once the dog alerted to the false ceiling, Sergeant Jones had probable cause to search the secret compartment, notwithstanding Brown's complaints.

## III.   CONCLUSION

For the foregoing reasons, we affirm the district court's denial of Brown's motion to suppress.

_____

_____

[3]This recalls the maxim attributed to Phaedrus: Everyone ought to bear patiently the results of his own conduct.