UNITED STATES of America, Plaintiff,

v.

Zackery KEYS, Defendants.

No. 4:06CR659 HEA.

United States District Court,
E.D. Missouri,
Eastern Division.

Aug. 31, 2007.

■■■■■■■■■■

---

Roger A. Keller, Jr., Office of U.S. Attorney, St. Louis, MO, for Plaintiff.

## OPINION, MEMORANDUM AND ORDER

AUTREY, District Judge.

This matter is before the Court on the Memorandum and Recommendation, [Doc. No. 35], of United States Magistrate Judge Frederick R. Buckles, pursuant to 28 U.S.C. § 636(b), in which Judge Buckles recommends that Defendant's Motion to Suppress Identification, [Doc. No. 18], Motion to Suppress Evidence, [Doc. No. 19], and Motion to Suppress Statements, [Doc. No. 20], be denied. Defendant has filed Objections to the Memorandum and Recommendation.

■■ When a party objects to a magistrate judge's report and recommendation, the Court must conduct a *de novo* review of the portions of the report, findings, or recommendations to which the party objected. See *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir.2003) (citing 28 U.S.C. § 636(b)(1)). This includes a *de novo* review of the magistrate's findings of fact, including any credibility determinations. *Id.* The court has reviewed the entire record, including listening to the audio recordings of the hearings held on January 17, 2007 and on April 10, 2007, and reading the transcript of the January 17, 2007 hearing.

### Discussion

Initially, Defendant objects to each and every adverse ruling, decision, finding and order contained in the Report and Recommendation arguing that they are against the weight of the evidence adduced at the motion hearing thereon, and are contrary to existing law.

Specifically, Defendant objects to Judge Buckles' request the government supplement

its authority on the validity of the search of Defendant's glove compartment after Defendant was stopped for failing to obey a traffic light. This objection must fail. During the hearing on January 17, 2007, Judge Buckles advised the parties that, based on the facts adduced, the record did not support the Government's position that Defendant consented to the search of the glove compartment of the vehicle in which a firearm was found. Defendant takes issue with Judge Buckles' allowing the Government additional time to supplement its argument with alternative grounds for a finding that the search was legally valid. Defendant, however, cites no authority which would preclude this Court from finding the search valid based on grounds supported by the testimony and the record. See *U.S. v. Blackman*, 904 F.2d 1250, 1253 fn. 2 (8th Cir.1990)("One of the grounds upon which the government justifies the search is consent. Because we find the search valid on other grounds, we have not given factual detail surrounding the eventual consent given by the driver of the taxi to search the trunk.")

Judge Buckles concluded that the search was valid because the officers had a reasonable articulable suspicion that the driver may be dangerous and gain immediate control of weapons. *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983). As such, Judge Buckles recommended that the Motions to Suppress Evidence and Statements [1] be denied.

Defendant also objects to the conclusion reached by Judge Buckles that the officers had a reasonable articulable suspicion that Defendant might be dangerous. In support of this objection, Defendant points to the facts that the officers were familiar with Defendant, had seen him in the police station on numerous occasions as a regular visitor, knew he was a trustee of the Village of Bel-Ridge. These facts, however, do not overcome the circumstances giving rise to the officers' search itself. When asked to produce an insurance card, Defendant told Of-

---

1. The Motion to Suppress Identification is moot in that the Government advised the Court in its response to Defendant's pretrial Motion that no pretrial out of court identification procedures were conducted in this case and no evidence of any such procedures being conducted was offered at the hearing.

fice Cissell not to shine his flashlight into the area, because he did not want the officer to see what was there. He further refused to produce an insurance card if the officer was going to shine the flashlight. When asked to step out of the van, Defendant resisted by pushing down the lock button on the door. When Defendant was outside of the van and told Officer Jost that he, Keys, would retrieve the card, Officer Jost advised Defendant that he, Jost, would retrieve it "for [the officers'] safety." At that point, Defendant brushed past Jost to enter the van. Officer Cissell grabbed Defendant and pulled him back from the van. These facts clearly support a reasonable articulable suspicion that Defendant might be dangerous and might be able to gain access to a weapon. The recognition and familiarity of Defendant notwithstanding, Defendant appeared adamant about the officers not seeing what was in the glove compartment. Further, Defendant's actions were in opposition to the reasonable request to see an insurance card. Defendant's peculiar actions were contrary to the professional relationship Defendant and the officers had on previous occasions. It would be ludicrous for the Officers to rely on a false sense of security based previous professional encounters with an individual behaving in the manner Defendant behaved at the time of the incident. The totality of the circumstances justified the search of the glove compartment of the van and therefore Defendant's objections are overruled.

### Conclusion

Having conducted a *de novo* review of the Motions and the record before the court, Defendant's objections are overruled. The Court, therefore will adopt Judge Buckles' well-reasoned Recommendations.

Accordingly,

Motion to Suppress Identification, [Doc. No. 18], Motion to Suppress Evidence, [Doc. No. 19], and Motion to Suppress Statements, [Doc. No. 20], be DENIED.

1. In its response to the defendant's pretrial motion the government stated that no pretrial out of court identification procedures were conducted

**IT IS HEREBY ORDERED** that Defendant's Motion to Suppress Identification, [Doc. No. 18], is DENIED as moot.

**IT IS FURTHER ORDERED** that Defendant's Motion to Suppress Evidence, [Doc. No. 19], is DENIED.

**IT IS FURTHER ORDERED** that Defendant's Motion to Suppress Statements, [Doc. No. 20], is DENIED.

### MEMORANDUM, REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

BUCKLES, United States Magistrate Judge.

All pretrial motions in the above cause were referred to the undersigned pursuant to 28 U.S.C. § 636(b). The defendant filed Motions to Suppress Identification (Docket No. 18)[1]; to Suppress Evidence (Docket No. 19); and to Suppress Statements (Docket No. 20). The motions were heard on January 17, 2007. A supplemental hearing was held on April 10, 2007. The parties filed post-hearing memoranda of law. A written transcript of the January 17, 2007, hearing was filed with the court. (Docket No. 27). The undersigned has relied upon the written transcript in making the following:

#### Findings of Fact

On July 30, 2006, at about 12:30 a.m. Officer Kevin Cissell, of the Bel–Ridge, Missouri Police Department, was on duty and monitoring traffic at the intersection of Natural Bridge Road and Highway I–170. Officer Cissell was in a marked police vehicle and in uniform. His police car was parked in a position which would permit him to observe traffic traveling through the intersection. There is a traffic signal at the intersection. There had been traffic accidents at the intersection in the past as a result of drivers violating the electric signals.

As he observed the intersection Officer Cissell saw an older model, white colored, Chevrolet work van violate the red stop signal at the intersection. Officer Cissell then

in this case and no evidence of any such procedures being conducted was offered at the hearing.

pulled behind the van and activated the emergency lights and siren on his police car. The van then pulled onto the side of the road and stopped. Officer Cissell parked his police car behind the van.

Officer Cissell then got out of his vehicle and approached the van. He was using a flashlight to illuminate the area because of the darkness. As he approached the driver's side of the van Officer Cissell shined his flashlight on the face of the driver. He recognized the driver of the van as Zackery Keys. Officer Cissell knew Keys because Keys was an elected Trustee of the Village of Bel–Ridge and was a frequent visitor to the Bel–Ridge Police Station.

Officer Cissell then explained to Keys that Officer Cissell had stopped the van because Keys had driven through the red stop light at the intersection. Keys responded with the question, "I did?" Officer Cissell affirmed that he had done so and Keys explained that he may have been distracted because he was talking on the telephone.

Officer Cissell then asked Keys to produce his driver's license and proof of insurance. These are standard questions during a traffic stop. Keys handed his driver's license to Officer Cissell. Keys also said that he had his insurance card in the vehicle but didn't want Officer Cissell to shine his flashlight into the area from which Keys was going to obtain the card because he had some "personal items" there that he didn't want to be seen. Officer Cissell told Keys that it was his intention to keep his flashlight trained on any area into which Keys was reaching. Officer Cissell intended to do so in order to ensure his own safety. Keys continued to insist that Officer Cissell not shine the light in the area and the conversation continued back and forth for several minutes.

On account of Keys' behavior Officer Cissell became concerned and using his radio called for another officer to come to the scene to assist. Within minutes Officer David Jost of the Bel–Ridge Police Department arrived on the scene. Officer Jost was also driving a marked police vehicle and was in uniform. After arriving at the scene Officer Jost got out of his vehicle and stood a few feet away from Officer Cissell and in a posi-

tion where he was able to observe what was occurring.

Officer Cissell then asked Keys to step out of the van. Keys then asked Officer Cissell if he treated everyone that he stopped in this manner. Officer Cissell replied that he did if the person was not being cooperative. Officer Cissell then attempted to open the door to the vehicle. He unlocked the door and Keys pushed the door lock back down. Officer Cissell then again opened the door lock and opened the van door. Keys then complied with Officer Cissell's instruction that he step out of the van.

Officer Cissell, Officer Jost and Keys then walked back and stood behind the van so as to be out of the traffic lane. Officer Cissell continued to ask Keys to produce the insurance card and Keys continued to insist that he did not want the officers to view the area when he retrieved the card from where it was located. After a few more minutes of such conversation between Officer Cissell and Keys, Officer Jost joined in the conversation. Keys then told Officer Jost that Keys would get the card from the van. Officer Jost then said to Keys, "No, for our safety, I'll retrieve it." Officer Jost then walked to the driver's door. Keys followed, along with Officer Cissell. Officer Jost then opened the door to the van. As he did so, Keys attempted to brush past him and to enter the van. Officer Jost put his hand out to prevent Keys from entering the vehicle, and again told Keys, "I'll get it." Officer Cissell then grabbed Keys by the arm and pulled him back from the van.

Officer Jost then looked into the glove box in the van. He immediately saw what he recognized as a pistol. He then yelled, "Gun" to alert Officer Cissell to the presence of a weapon. After looking back to make sure that Keys was not in a position where he could lunge after the gun, Officer Jost removed the pistol from the glove box. Officer Jost then said to Keys, "Can you have this?", to which Keys replied, "No, I cannot." Officer Jost asked the question because he was aware from conversations between people, including other officers, at the Bel–Ridge

Police Station, relating to rumors that Keys was a convicted felon.

Officer Cissell then placed Keys under arrest and handcuffed him. Keys was transported to the Bel–Ridge Police Station which was a very short distance away. Once there he was booked and processed. During the booking process Officer Cissell, for the first time, advised Keys of his *Miranda* rights. Keys made no statements following the advice of rights.

## Discussion

"An officer who observes a traffic violation, even a minor one, has probable cause to initiate a traffic stop." *United States v. Brown,* 345 F.3d 574, 578 (8th Cir.2003). During such a stop the officer may lawfully check the driver's license and registration and ask other questions reasonably related to the stop. *Id.* Here, Officer Cissell saw the defendant violate an electric traffic signal, thus providing probable cause to stop the vehicle. Officer Cissell then asked the driver to produce his driver's license and proof of insurance, which he was lawfully entitled to do during this traffic stop.[2] Upon Officer Cissell's request Keys produced his driver's license as required. Keys further stated that he did have a proof of insurance card in the glove compartment of the vehicle and that he would retrieve the card. Keys told Officer Cissell that he did not want Officer Cissell to shine the flashlight into the glove compartment because he did not want the officer to see some "personal items" that he had in the glove box. Officer Cissell, concerned for his own safety, refused to abide by Keys' admonition and informed Keys that he would shine the light into any area into which Keys was reaching with his hands. Further discussion ensued between Officer Cissell and Keys concerning whether Officer Cissell should shine his light toward the glove compartment while Keys retrieved the card. Eventually, Officer Cissell ordered Keys to step out of the vehicle which the officer was lawfully entitled to do. *Pennsylvania v. Mimms,* 434 U.S. 106, 111, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977).

Keys initially resisted the Officer's direction to get out of the vehicle by pushing down the door lock. Keys then complied after Officer Cissell pulled up the door lock and opened the door. The conversation between Officer Cissell and Keys continued at the rear of Keys' vehicle. Officer Jost, who had arrived at the scene upon Officer Cissell's request for backup, eventually joined the conversation. At some point Keys told the officer he would get the card from the glove compartment, to which Officer Jost responded "No, for our safety, I'll retrieve it." Keys and the officers then walked to the front of the vehicle and Officer Jost opened the door. When he did so, Keys attempted to brush past him to enter the van. Officer Jost repeated his statement "I'll get it." and Officer Cissell pulled Keys back away from the vehicle. Officer Jost then looked into the glove compartment and found and seized the firearm which forms the basis of this prosecution.

■■■ The government first contends that the defendant consented to the search of the glove compartment. "Under the fourth and fourteenth amendments, searches conducted without a warrant issued upon probable cause are presumptively unreasonable, subject to a few specifically established exceptions. A search that is consented to is one of those exceptions. Thus, a warrantless search is valid if conducted pursuant to the knowing and voluntary consent of the person subject to a search. The government has the burden of proving by a preponderance of the evidence that a subject's alleged consent to search was legally sufficient to warrant admitting the fruits of the search into evidence. This burden is not satisfied by showing a mere submission to a claim of lawful authority. Rather, the government must show that a reasonable person would have believed that the subject of a search gave consent that was the product of an essentially free and uncon-

2. Every person operating a motor vehicle on public streets in the State of Missouri is required to have a valid operator's license, R.S.Mo. § 302.020; to carry the license at all times while operating a motor vehicle and to display the license on demand by a law enforcement officer, R.S.Mo. § 302.181.3. The operator of a motor vehicle must also carry in the vehicle a card showing that the vehicle is insured and must produce the card on demand by a law enforcement officer. R.S.Mo. 303.024.5.

strained choice, and that the subject comprehended the choice that he or she was making. In other words, a person can render a search legal by behaving in a way that would cause a reasonable person to believe that he or she has knowingly and voluntarily consented, whether or not the personal actually intends to consent. Thus the Fourth Amendment requires only that the police reasonably believe the search to be consensual." *United States v. Cedano–Medina*, 366 F.3d 682, 684–85 (8th Cir.)(internal citations and quotations omitted), *cert. denied*, 543 U.S. 1035, 125 S.Ct. 808, 160 L.Ed.2d 599 (2004).

▪ The undersigned cannot find as a matter of fact or law that defendant Keys ever consented to a search of the glove compartment of his vehicle. While it is true that during their testimony at the pretrial hearing both Officer Cissell and Officer Jost stated that Keys had given them permission to obtain the insurance card from the glove box. Officer Jost initially testified that during his conversation with Keys, that the defendant said "Okay, you can get the insurance card." Officer Jost then clarified his testimony by saying "... actually I believe he said 'I'll get it,' and I said, 'No, for our safety, I'll retrieve it.'" Officer Jost testified that when Keys tried to brush past him and to enter the vehicle Officer Jost again said "No, that's okay, I'll get it." Based on all of this evidence there is nothing from which a reasonable person could believe that Keys ever explicitly or implicitly consented to a search of the glove compartment of the vehicle.

▪ Alternatively, the government asserts that the search of the glove compartment was lawful because the officers had a reasonable articulable suspicion that there might be a weapon in the vehicle. During the course of a lawful traffic stop a police officer may conduct a limited warrantless search of the driver and the vehicle for weapons if he has a reasonable articulable suspicion that the driver may be dangerous and gain immediate control of weapons. *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983). "The Supreme Court has frequently noted the inherent danger traffic stops pose to police officers and the consequent likelihood that minimally intrusive weapons

searches will be reasonable." *United States v. Menard*, 95 F.3d 9, 11 (8th Cir.1996). The level of suspicion necessary to permit such a search is considerably less than a preponderance of the evidence or probable cause. *United States v. Sokolow*, 490 U.S. 1, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989). All that is required is some minimal level of objective justification for the suspicion. *Id.* Whether such reasonable suspicion exists is to be determined by examining the totality of the circumstances. *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). The test is an objective one, that is, what an officer in the circumstances reasonably could have believed. *United States v. Rowland*, 341 F.3d 774, 783 (8th Cir.), *cert. denied*, 540 U.S. 1093, 124 S.Ct. 969, 157 L.Ed.2d 802 (2003); *United States v. Roggeman*, 279 F.3d 573, 580 n. 5 (8th Cir.), *cert. denied*, 537 U.S. 879, 123 S.Ct. 79, 154 L.Ed.2d 134 (2002).

The facts known to the officers prior to the search of the glove compartment were these: The defendant had been stopped for a traffic violation; it was late at night and dark enough that a flashlight was needed to illuminate the interior of the vehicle; the defendant was asked to produce his driver's license and insurance card, routine procedures during a traffic stop; the driver objected to the officer shining the flashlight in the area of the glove compartment saying he didn't want the officer to see what was in the compartment; when told that this was unacceptable he continued to insist to the officer that he objected to the light being shined if he reached into the glove compartment; when asked to get out of the vehicle the driver resisted by pushing down the lock on the door when the officer attempted to open it; that once out of the car the driver continued to object to the flashlight being shined to the glove compartment; after the driver stated that he would go into the vehicle to obtain the card and being told by the officer that, for safety reasons, the officer would obtain the card the driver nevertheless attempted to brush by the officer and to enter the vehicle before the officer could do so. In the totality of these circumstances the officers could reasonably suspect that a weapon might be lo-

cated in the glove compartment of the vehicle and their search of the glove compartment and seizure of the weapon found therein was lawful. *See United States v. Holifield*, 956 F.2d 665 (7th Cir.1992)(Search of glove compartment of vehicle during traffic stop justified on account of driver's unusual behavior and aggressive tone). *See also United States v. Shranklen*, 315 F.3d 959 (8th Cir.), *cert. denied*, 538 U.S. 971, 123 S.Ct. 1774, 155 L.Ed.2d 529 (2003).

The defendant also moves to suppress the statements made by him to law enforcement officers. All of the statements made by the defendant were made during the course of the traffic stop and prior to his arrest. A person is not in "custody" within the meaning of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) during a routine traffic stop and statements made to officers in such circumstances are admissible in evidence even in the absence of the warning required by *Miranda*. *Berkemer v. McCarty*, 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984); *United States v. Martin*, 411 F.3d 998, 1002–1003 (8th Cir.2005); *United States v. Rodriguez–Arreola*, 270 F.3d 611, 617 (8th Cir.2001).

There is no evidence that the defendant's statements were the result of any threats, promises or other coercion by the officers, and the statements were therefore voluntary. *Colorado v. Connelly*, 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986).

### Conclusion

For all of the foregoing reasons the defendant's Motions to Suppress Evidence and to Suppress Statements should be denied. The defendant's Motion to Suppress Identification should be denied as moot.

Accordingly,

**IT IS HEREBY RECOMMENDED** that defendant's Motion to Suppress Evidence (Docket No. 19); and Motion to Suppress Statements (Docket No. 20) be denied.

**IT IS FURTHER RECOMMENDED** that defendant's Motion to Suppress Identification (Docket No. 18) be denied as moot.

The parties are advised that they have until **Friday, August 17, 2007,** in which to file written objections to this Report and Recommendation. Failure to timely file objections may result in waiver of the right to appeal questions of fact. *Thompson v. Nix*, 897 F.2d 356, 357 (8th Cir.1990).

Dated Aug. 10, 2007.