# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

————————

No. 04-2592

————————

| | |
|---|---|
| United States of America, | * |
| | * |
| Appellee, | * |
| | * Appeal from the United States |
| v. | * District Court for the District |
| | * of South Dakota. |
| William T. Carter, | * |
| | * |
| Appellant. | * |

————————

Submitted: December 16, 2004
Filed: June 9, 2005

————————

Before LOKEN, Chief Judge, and MORRIS SHEPPARD ARNOLD and RILEY, Circuit Judges.

————————

MORRIS SHEPPARD ARNOLD, Circuit Judge.

William Carter appeals from his conviction and sentence on four counts of abusive sexual contact, *see* 18 U.S.C. §§ 1153, 2244(a), 2246(3), two counts of sexual abuse of a minor, *see* 18 U.S.C. §§ 1153, 2243(a), 2246(2), and one count of incest, *see* 18 U.S.C. § 1153; S.D. Codified Laws §§ 22-22-1(6), 25-1-6. Mr. Carter argues that the district court erred in admitting certain evidence, in limiting the cross-examination of a prosecution witness, in denying his motion for a judgment of acquittal on two counts, and in sentencing him. Mr. Carter also contends that the prosecutor's closing argument denied him a fair trial. We affirm Mr. Carter's

convictions, but we reverse his sentence and remand to the district court for resentencing.

## I.

Mr. Carter was convicted of sexually abusing his stepdaughter, one of his granddaughters, and the granddaughter's friend. The record supports a finding beyond a reasonable doubt of the facts that follow.

When Mr. Carter's stepdaughter was sixteen or seventeen years old and living in Mr. Carter's home, she returned from a party, drank some alcohol that he provided, and went to bed fully clothed. She fell asleep and awoke to find Mr. Carter touching her breasts under her shirt but over her bra. After she awoke, he desisted and told her that she had a phone call. When she answered the phone, however, no one was on the line. For this incident, Mr. Carter was convicted of abusive sexual contact.

One of Mr. Carter's granddaughters lived with the Carters during November and December of 2001, at which time she was thirteen years old; earlier that fall she had stayed at the Carters' home on weekends. The first sexual incident involving Mr. Carter and his granddaughter occurred when Mr. Carter grabbed her breasts from behind while she was fully clothed and making a sandwich in the Carters' kitchen. At a later time, she became high on marijuana that Mr. Carter gave her and "blacked out." When she regained her senses, she was straddling Mr. Carter's lap; the two of them were kissing and moving their fully-clothed bodies as though they were having sex. Mr. Carter's granddaughter then went to her bedroom, and Mr. Carter followed. There he inserted his fingers into her vagina and performed cunnilingus while rubbing her breasts. For these actions, Mr. Carter was convicted on two counts of abusive sexual contact, two counts of sexual abuse of a minor, and one count of incest.

The third complaining witness became acquainted with Mr. Carter through his granddaughter, and, when she was thirteen, she would occasionally spend the night at the Carters' home. During one stay, she was in Mr. Carter's bedroom drinking alcohol and smoking marijuana that Mr. Carter had provided when he loaded a pornographic videotape into the bedroom's VCR. Mr. Carter then kissed her and touched her breasts over her clothes before she escaped to the bedroom of Mr. Carter's granddaughter. For this incident, Mr. Carter was convicted of abusive sexual contact.

## II.
### A.

At trial, in addition to admitting the testimony of the three complaining witnesses, the district court allowed three other female witnesses to testify for the prosecution under Federal Rules of Evidence 413 and 414. Taken together, Rules 413 and 414 permit the admission of evidence regarding offenses of sexual assault and child molestation that Mr. Carter allegedly committed in addition to those for which he was tried. Mr. Carter argues that admitting this testimony was an abuse of discretion because the testimony's unfair prejudice outweighed its probative value, in violation of Rule 403, and because the witnesses' allegations were not substantially similar to the charged offenses. We disagree.

One of the three additional witnesses testified that, when she was thirteen, Mr. Carter gave her alcohol during an overnight stay at the Carters' home and that, during the night, she awoke to find Mr. Carter on top of her with his penis inside her vagina. Another witness testified that, when she was fourteen and spending the night at the Carters' home, she passed out after drinking alcohol that Mr. Carter provided and awoke to find her pants and underwear removed, her breasts exposed, and her private area sore. The third witness testified that, when she was thirteen and a babysitter for the children of Mr. Carter's daughter, she had a series of sexual

encounters with Mr. Carter over a period of several months that began when Mr. Carter showed her a pornographic movie, and that during this period Mr. Carter gave her alcohol, marijuana, and cigarettes.

For several reasons, admitting this testimony was not an abuse of discretion. First, the district court weighed whether the testimony that was admissible under Rules 413 and 414 should be excluded as unduly prejudicial under Rule 403. The district court, moreover, decided to limit the number of witnesses that the government could offer and to give the jury a cautionary instruction with respect to how the witnesses' testimony should be used. *Cf. United States v. Mound*, 149 F.3d 799, 801-02 (8th Cir. 1998), *cert. denied*, 525 U.S. 1089 (1999). In addition, the witnesses were young, teenaged girls when the incidents to which they testified occurred, the incidents involved sexual abuse by Mr. Carter, and Mr. Carter's methods for seducing them were consistent with the complaining witnesses' experiences. Given the similarities between the testimony of the witnesses to these earlier acts of sexual abuse and the testimony of the complaining witnesses to the charged conduct, the district court did not err in admitting the former testimony under Rules 413 and 414. *See id.* at 802.

B.

Mr. Carter also contends that the district court erred in admitting extrinsic evidence of inconsistent statements made by his wife, Tisa Carter. When the prosecution cross-examined Ms. Carter, who testified as a defense witness, the prosecution asked her whether she had warned a friend that Mr. Carter wanted to take that friend and the friend's daughter to bed and whether she had told one of Mr. Carter's daughters about her early-morning discovery of Mr. Carter masturbating while putting his fingers inside a naked adult female, who was lying on the floor in the Carters' home. Neither of these statements fell within the scope of Ms. Carter's testimony on direct examination, and Ms. Carter denied making them. On rebuttal,

the prosecution offered testimony from Ms. Carter's friend and Ms. Carter's stepdaughter, both of whom said that Ms. Carter had made the respective statements that she earlier denied making.

We do not understand how Ms. Carter's testimony denying having made the statements about Mr. Carter was admissible in the first place, since the testimony was in response to the prosecution's attempt to elicit hearsay by asking her to confirm out-of-court statements in order to prove the truth of those statements. *See* Fed. R. Evid. 801, 802. Because Mr. Carter appeals only the admission of extrinsic evidence of Ms. Carter's prior inconsistent statements, however, we pass over the admission of Ms. Carter's response to the prosecution's cross-examination.

Although Federal Rule of Evidence 613(b) allows the introduction of extrinsic evidence of a witness's prior inconsistent statement in the circumstances present in this case, our case law adds a restriction not explicitly included in Rule 613 itself: Extrinsic evidence of a collateral matter is not admissible. *United States v. Grooms*, 978 F.2d 425, 428-29 (8th Cir. 1992); *United States v. McCrady*, 774 F.2d 868, 873 (8th Cir. 1985). Evidence that does not pertain "to the substantive issues of the trial" and that "could not be shown in evidence for any purpose independent of the contradiction" is collateral. *United States v. Roulette*, 75 F.3d 418, 423 (8th Cir. 1996), *cert. denied*, 519 U.S. 853 (1996).

Even assuming that the extrinsic evidence of prior inconsistent statements was collateral, however, we conclude that any error resulting from the district court's admission of the evidence was harmless. Although Ms. Carter was the only defense witness in addition to Mr. Carter himself, the prosecution elicited other testimony from her on cross-examination that undermined her credibility. Further, the overall evidence of Mr. Carter's guilt, which included testimony from the three complaining witnesses and the three "other act" witnesses, was compelling. *Cf. McCrady*,

774 F.2d at 874.  Therefore "no substantial rights of the defendant were affected."
*Id.*

## C.

Next, Mr. Carter objects to the district court's admission into evidence of a letter to him from his granddaughter, in which she expresses the anger and hurt that she felt after Mr. Carter abused her.  At trial, Mr. Carter objected when the letter was admitted into the record, although he failed to specify the grounds for this objection.  To justify admitting the letter, the district court cited to Federal Rule of Evidence 801(d)(1)(B), which excludes from the definition of hearsay prior statements of a declarant that are "consistent with the declarant's testimony" and that "rebut ... [a] charge against the declarant of recent fabrication or improper influence or motive."  On appeal, Mr. Carter claims that he preserved a hearsay objection to the letter when he objected to its admission as evidence.

We are unable to see how the letter falls within the hearsay exclusion set forth in Rule 801(d)(1)(B), since the granddaughter's alleged motive for fabrication (*i.e.*, to deflect attention from her behavioral problems) arose before she wrote the letter. *See Tome v. United States*, 513 U.S. 150, 158-60 (1995).  Nevertheless, we do not reach the merits of Mr. Carter's objection, since he failed to preserve his objection for appeal.  We have repeatedly held that objections must be specific and that otherwise we will review evidentiary rulings only for plain error.  *See, e.g.*, *United States v. Jones*, 266 F.3d 804, 814, 814 n.8 (8th Cir. 2001); *United States v. Roach*, 164 F.3d 403, 410 (8th Cir. 1998), *cert. denied* 528 U.S. 845 (1999); *United States v. Dorian*, 803 F.2d 1439, 1446 (8th Cir. 1986).  Here the district court cited a hearsay exclusion when admitting the letter, but that does not shed any light on the grounds for Mr. Carter's objection, which preceded mention of the hearsay exclusion.

Reviewing the admission of the letter for plain error, we conclude that its admission did not constitute a miscarriage of justice. *Dorian*, 803 F.2d at 1446. The letter did not serve to bolster skimpy testimony; it was only one page long, and the testimony of Mr. Carter's granddaughter was extensive.

D.

Mr. Carter contests another evidentiary ruling of the district court: He argues that an FBI agent's testimony about the titles and general content of pornographic videotapes found in the Carters' home should have been excluded as irrelevant or unduly prejudicial, although he fails to cite any case law to justify his assertion. We disagree. Asking teenaged women to watch pornographic movies featuring young, adult women was part of Mr. Carter's *modus operandi*. Testimony to the effect that Mr. Carter possessed such pornographic movies thus was relevant, and the district court did not abuse its discretion in deciding that the testimony's probative value exceeded any concomitant prejudice, since the testimony was limited to the movie titles and the movies' general theme of depicting young women.

III.

Having disposed of Mr. Carter's objections to the district court's evidentiary rulings, we address his contention that the district court erred by limiting his cross-examination of T.E., one of the witnesses who testified to other acts committed by Mr. Carter. On cross-examination, Mr. Carter attempted to show that the sexual encounters that T.E. recalled having with Mr. Carter actually involved one Craig Howe, a nineteen- or twenty-year-old man with whom T.E. admitted to having a sexual relationship during the same summer that she had one with Mr. Carter. In particular, Mr. Carter attempted to question T.E. about a sexual encounter with Mr. Carter that occurred inside his car, to which she had testified on direct examination, in order to show that the sexual encounter was with Mr. Howe and not Mr. Carter. The judge, however, sustained the prosecution's objection on relevance

grounds, commenting that T.E. had not testified about a sexual encounter that occurred in a car. The district court was mistaken, as the transcript demonstrates.

The testimony that Mr. Carter sought to elicit from T.E. was relevant, since it would have tended to undermine her direct testimony. The government argues that, even so, excluding the testimony was appropriate under Federal Rule of Evidence 412(a)(1), which, according to the government, prevents Mr. Carter from questioning T.E. about sexual behavior with someone other than Mr. Carter. Regardless of whether Rule 412(a)(1) applies or whether such a restriction on cross-examination would violate the sixth amendment's confrontation clause, *see United States v. Bear Stops*, 997 F.2d 451, 454-55 (8th Cir. 1993); *United States v. Begay*, 937 F.2d 515, 523 (10th Cir. 1991), any error here was harmless. T.E already had admitted to having had a sexual relationship with Mr. Howe during the same period that the sexual encounters with Mr. Carter occurred, and Mr. Carter did not attempt to show that the other sexual encounters that T.E. testified about having with him instead involved Mr. Howe.

IV.

A.

Next Mr. Carter claims that the district court should have directed a verdict of acquittal on Count VI of the indictment, which charged him with incest. Rather than defining incest, federal law incorporates the state-law definition of the crime, *see* Indian Major Crimes Act (IMCA), 18 U.S.C. § 1153, and thus Mr. Carter must have committed incest under South Dakota law to be guilty of incest under federal law. Because Count VI refers only to South Dakota's rape statute, *see* S.D. Codified Laws § 22-22-1(6), Mr. Carter contends that the district court should have acquitted him of the incest charge.

Mr. Carter's argument is frivolous. South Dakota's rape statute defines rape of a family member as incest, provided that the perpetrator and victim are not married and are within the degrees of consanguinity within which South Dakota voids marriages. *Id.* Although South Dakota also has a statute entitled "Incest," *see* S.D. Codified Laws § 22-22-19.1, that statute defines incest only as sexual contact, *id.*, while the rape statute extends the definition of incest to include sexual penetration, S.D. Codified Laws § 22-22-1(6). In case any doubt remains that § 22-22-1(6) defines incest in South Dakota for purposes of IMCA, we note that we have previously upheld a conviction for incest under § 22-22-1(6) in a case arising under IMCA, *United States v. Kirkie*, 261 F.3d 761, 764, 764 n.2 (8th Cir. 2001), and that South Dakota's Supreme Court has recognized that § 22-22-1(6) defines incest in that state, *State v. Bale*, 512 N.W.2d 164, 165 (S.D. 1994).

B.

Mr. Carter also argues that the district court should have granted a judgment of acquittal on Count VII, which alleged abusive sexual contact with his granddaughter "on or about between" December 26, 2001, and December 29, 2001. The evidence relevant to Count VII that was offered at trial pertained to an incident that occurred in August or September of that year. Mr. Carter contends that therefore no evidence supports his conviction on that count.

Again Mr. Carter's claim is without merit. As we have said, " 'a variance between the date in the indictment and the proof is not fatal if the proof shows that the acts charged were committed on a date within the statute of limitations and prior to the return date of the indictment, as long as the date was not a material element of the crime charged.' " *United States v. Turner*, 975 F.2d 490, 494 (8th Cir. 1992) (quoting *United States v. Joyner*, 539 F.2d 1162, 1164-65 (8th Cir. 1976), *cert. denied*, 429 U.S. 983 (1976)). The proof showed that the sexual contact occurred within the statute of limitations and prior to the indictment of Mr. Carter. Also, the

statutes under which Mr. Carter was convicted do not include as an element of abusive sexual contact the date on which the sexual contact occurred. *See* 18 U.S.C. §§ 2244(a)(3), 2246(3).

Mr. Carter, however, argues that the December 26 through 29 dates became an element of abusive sexual contact through the district court's answer to a question that the jury posed regarding the importance of those dates, since jury instructions that the government does not object to " 'become[] the law of the case.' " *United States v. Ausler*, 395 F.3d 918, 920 (8th Cir. 2005) (quoting *United States v. Tapio*, 634 F.2d 1092, 1094 (8th Cir. 1980) (per curiam)). Without objection, the district court responded to the jury's query by instructing that "the government must prove beyond a reasonable doubt ... that the offense was committed 'on or about between December 26, 2001, and December 29, 2001' "; it also directed the jury to review an earlier instruction, which stated that "[i]t is sufficient if the evidence ... establishes beyond a reasonable doubt that the offenses were committed on a date or dates reasonably near the dates alleged." Leaving aside the differences between the elements of the crimes at issue in *Ausler* and in this case, even if the district court's instructions altered the elements of abusive sexual contact, the instructions permit a conviction on Count VII if the sexual contact occurred outside of the December 26 through 29 window.

V.

Mr. Carter's final assignment of error with respect to his conviction relates to the prosecution's closing argument, which, according to Mr. Carter, deprived him of a fair trial. Mr. Carter argues that the prosecutor improperly incorporated his personal knowledge and credibility into his closing argument and appealed to the jury's sympathies and prejudices by pejoratively referring to Mr. Carter. To succeed, Mr. Carter must show not only that "the statements were in fact offensive," but also that they "were so offensive so as to prevent a fair trial." *United States v. Williams*,

97 F.3d 240, 245 (8th Cir. 1996). Because the incidents about which Mr. Carter complains are not so offensive as to prevent a fair trial, we decline to reverse his conviction and conclude that the district court did not abuse its discretion in controlling the closing arguments. *See United States v. Eldridge*, 984 F.2d 943, 946 (8th Cir. 1993).

In the two instances when the prosecutor may have improperly brought his personal knowledge to bear on the case, the district court cured any possible prejudice to Mr. Carter. *See United States v. Cannon*, 88 F.3d 1495, 1502 (8th Cir. 1996). When Mr. Carter testified on direct examination, he referred to his military service. On cross-examination, he admitted to being AWOL (absent without leave) from his unit during the Vietnam War, but he claimed that his absence was unintentional. The prosecutor, in his closing argument, said, "I did not serve in the Army, but I've never heard of [unintentional AWOL]." The district court sustained Mr. Carter's immediate objection and instructed the jury to disregard the prosecutor's comment. Later the prosecutor attempted to explain why he had declined to prosecute Mr. Carter for abuse alleged by one of the government's "other act" witnesses. The prosecutor told the jury, "You know much more than I did." Again Mr. Carter immediately objected, and the district court told the jury to disregard the prosecutor's statement. In his jury instructions, the judge also told the jury that statements and comments by counsel were not evidence. Given that the district court quickly repudiated the prosecutor's comments and instructed the jury not to consider such comments as evidence, we conclude that there was no error here.

Last, Mr. Carter objects to the prosecutor's description of Mr. Carter as a "con man" and "deviate [sic]," among other things, during closing argument. Such name-calling is improper, *see id.*, and the use of the word "deviate" is especially abusive. Mr. Carter, however, failed to object to these descriptions, and therefore we must consider whether the prosecutor's closing argument constituted plain error. *United*

*States v. Splain*, 545 F.2d 1131, 1136 (8th Cir. 1976).  Because the prosecution presented substantial and persuasive evidence of Mr. Carter's guilt, *see id.* at 1135-36, we conclude that the prosecutor's comments did not result in a miscarriage of justice, although the comments come close to affecting substantial rights.  We admonish the government to refrain from abusive comments in future cases.

VI.

We now turn to the assignments of error that Mr. Carter raises with respect to his sentence.  After *United States v. Booker*, 125 S. Ct. 738, 765-66 (2005), district courts are required to fix sentences in light of the considerations set forth in 18 U.S.C. § 3553(a), one of which is the applicable sentencing range under the United States Sentencing Guidelines, *see* 18 U.S.C. § 3553(a)(4)(A).  Therefore we consider whether the district court erred in calculating the applicable sentencing range.

A.

Mr. Carter argues that the district court violated the *ex post facto* clause of the Constitution by sentencing him under the 2002 edition of the guidelines that included U.S.S.G. § 4B1.5(b)(1), which was the basis for a five-point enhancement to his sentence.  According to Mr. Carter, the court was required to rely on the 2000 guidelines because all of the evidence at trial indicated that the last charged offense occurred before November 1, 2001, the date that both § 4B1.5(b)(1) and the 2001 guidelines went into effect, *see* U.S.S.G., app. C, amend. 615.

Mr. Carter would be entitled to application of the 2000 guidelines if his last charged offense occurred before November 1, 2001, and the application as a whole of the 2000 guidelines would have resulted in a lesser sentence.  *See* U.S.S.G. § 1B1.11 (2002); *United States v. Comstock*, 154 F.3d 845, 848 (8th Cir. 1998).  But the district court did not clearly err when it found that at least one of the charged offenses occurred after November 1, 2001.  *See United States v. Tirado*, 313 F.3d

437, 440 (8th Cir. 2002), *cert. denied*, 540 U.S. 832 (2003). The friend of Mr. Carter's grandchild testified that the abusive sexual contact of which she complained took place after November 1, 2001. In response to Mr. Carter's foundational questions asked during the prosecution's direct examination, the complaining witness said that the sexual contact occurred in December, 2001, before Christmas. Later on direct examination she changed her answer and said that the sexual contact happened before November 2, 2001, but when pressed on cross-examination she said that the contact happened around November 2, 2001. Although her testimony was equivocal, we cannot conclude that, in the face of such testimony, the district court clearly erred in determining that the defendant perpetrated at least one of his offenses after the effective date of § 4B1.5(b)(1).

### B.

In Mr. Carter's next assignment of error regarding his sentence, he contests the district court's finding that his granddaughter's friend was incapacitated or unable to appraise the nature of his conduct, which increased the base offense level for Count II from 10 to 12. *See* 18 U.S.C. § 2242(2); U.S.S.G. § 2A3.4(a)(2) (2002). Mr. Carter, however, failed to object to the district court's decision to set the base offense level at 12, and therefore we review only for plain error.

The district court did not plainly err because it did not err at all. The complaining witness testified that, prior to Mr. Carter's abusive sexual contact, she smoked marijuana and drank alcohol that Mr. Carter offered and that she consequently felt "drowsy" and "really tired." This evidence provides a sufficient basis to conclude that she was unable to appraise the nature of Mr. Carter's conduct.

### C.

Mr. Carter also argues that the district court erred in determining the base offense levels for the two counts of sexual abuse of a minor and the count of incest.

-13-

A cross-reference in U.S.S.G. § 2A3.2(c)(1) (2002) directs the district court to apply § 2A3.1 when the minor who was sexually abused was "incapable of appraising the nature of the conduct; or ... physically incapable of declining participation in, or communicating unwillingness to engage in, that sexual act," 18 U.S.C. § 2242(2). The incident for which Mr. Carter was convicted of sexual abuse and incest occurred after Mr. Carter gave his granddaughter marijuana to smoke, which caused her to "black out." The sexual abuse, which involved digital sex and cunnilingus, took place after his granddaughter regained consciousness.

Mr. Carter contends that the fact that his granddaughter told Mr. Carter to stop while he was performing cunnilingus on her proves that she could "apprais[e] the nature of [Mr. Carter's] conduct" and "communicat[e] unwillingness to engage in" cunnilingus. Therefore, the argument goes, the district court erred when it found that the marijuana had incapacitated her. We conclude that the district court did not clearly err. Even though Mr. Carter's granddaughter was conscious during the sexual abuse and incest, the lingering effects of the marijuana may have hindered her ability to object straightaway to the abuse, and those effects provide a sufficient basis to prevent the district court's finding from being clearly erroneous. *See Tirado*, 313 F.3d at 440.

D.

Finally, Mr. Carter argues that the district court erred by not grouping all three of the counts arising from the incident just mentioned. Mr. Carter had digital and oral sex with his granddaughter in the space of a few minutes, but the district court grouped only the counts that relate to the cunnilingus – one count of sexual abuse (Count V) and one count of incest (Count VI).

We agree with Mr. Carter that the district court's failure to group the digital-sex count (Count IV) with Counts V and VI was error. The sentencing guidelines require

-14-

grouping of counts that "involve substantially the same harm," which includes counts that involve "the same victim and the same act or transaction." U.S.S.G. § 3D1.2(a) (2002). Although the digital sex and cunnilingus did not occur at exactly the same time, the cunnilingus immediately followed the digital sex, which seems close enough in time to constitute "the same act or transaction" if the application notes are taken as a guide. For instance, application note 3 advises that a count for kidnapping and a count for assault, which occurred in the course of the kidnapping, should be grouped. Two counts for shooting at the same federal officer on two different days or for raping the same person on two different days should not be grouped, *see* U.S.S.G. § 3D1.2, comment. (n.3, 4) (2002), but such a time difference far exceeds the few minutes separating the two sexual acts here.

Because Mr. Carter did not object to the district court's failure to group Count IV with Counts V and VI, we must decide whether the district court committed plain error. *See United States v. Karam*, 37 F.3d 1280, 1285 (8th Cir. 1994), *cert. denied*, 513 U.S. 1156 (1995). The error was plain in the sense of obvious, *United States v. Olano*, 507 U.S. 725, 734 (1993); the district court failed to follow the language of the sentencing guidelines. But to get relief, Mr. Carter has the burden of showing a reasonable probability that, if the court had not erred, he would have received a sentence shorter than the 360 months that the district court imposed. *United States v. Pirani*, 406 F.3d 543, 550-53 (8th Cir. 2005) (en banc). Grouping Count IV with Counts V and VI would decrease Mr. Carter's guidelines sentence to a maximum of 327 months. Given the absence of evidence that the district court would have departed upward and imposed a 360-month sentence, the 37-month difference between the maximum sentence in the correct guidelines range and Mr. Carter's 360-month sentence creates a reasonable probability that Mr. Carter would have received a lower sentence if the district court had correctly apprehended the applicable guidelines range. *Cf. United States v. Warren*, 361 F.3d 1055, 1059 (8th Cir. 2004). To decide otherwise that the district court would have sentenced Mr.

-15-

Carter outside of the applicable guidelines range would require us to engage in the exact kind of speculation that our circuit has sought to avoid in reviewing sentences for plain error. *See Pirani*, 406 F.3d at 553; *cf. Warren*, 361 F.3d at 1059.

Mr. Carter still cannot obtain relief, however, if the district court's error did not "seriously affect[] the fairness, integrity, or public reputation of judicial proceedings." *Olano*, 507 U.S. at 732 (internal quotations omitted). The nature and extent of the prejudice that Mr. Carter has suffered leads us to conclude that this last component of plain error is also present. *See United States v. Rodriguez-Ceballos*, No. 04-3390, 2005 WL 1131672, at *5 (8th Cir. May 16, 2005); *cf. Warren*, 361 F.3d at 1059. We therefore conclude that Mr. Carter should be resentenced.

## VII.

Mr. Carter also maintains that his sixth amendment rights were infringed because the district court, rather than a jury, found facts on the basis of which his sentence was enhanced. *See Booker*, 125 S. Ct. 738. Because the district court on remand will sentence Mr. Carter in accordance with *Booker*, 125 S. Ct. at 764-67, which remedied the sixth amendment violation that inhered in the mandatory-guidelines scheme by making the guidelines advisory, his argument is moot.

## VIII.

We affirm Mr. Carter's conviction but reverse his sentence. We remand to the district court for resentencing under *Booker*, with Count IV grouped with Counts V and VI.

_____