# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 00-2469

_____

United States of America,                    *
                                             *
            Appellee,                        *
                                             *
    v.                                       *
                                             *
John L. Palmer,                              *
                                             *
            Appellant.                       *

_____

No. 00-3769          Appeals from the United States
_____          District Court for the
                     Western District of Missouri.

United States of America,                    *
                                             *
            Appellee,                        *
                                             *
    v.                                       *
                                             *
James O. Cashaw, also known as J.C.,         *
                                             *
            Appellant.                       *

_____

No. 01-1601

_____

United States of America,                    *
                                             *
            Appellee,                        *

                                              *
           v.                                 *
                                              *
Harold J. Jones, also known as                *
Jeff  Jones,                                  *
                                              *
               Appellant.                     *
                        _____

                Submitted:  November 12, 2001

                   Filed:  July 23, 2002
                        _____

Before WOLLMAN,[1] Chief Judge, BOWMAN, and STAHL,[2] Circuit Judges.
                        _____

WOLLMAN, Chief Judge.

    Appellants John Palmer, James Cashaw, and Harold Jones (collectively, the
defendants) appeal from orders entered by the district court[3] following remand from
this court.  We affirm.

---

[1]The Honorable Roger L. Wollman stepped down as Chief Judge of the United
States Court of Appeals for the Eighth Circuit at the close of business on January 31,
2002.  He has been succeeded by the Honorable David R. Hansen.

[2]The Honorable Norman H. Stahl, United States Circuit Judge for the First
Circuit, sitting by designation.

[3]The Honorable Howard F. Sachs, United States District Judge for the Western
District of Missouri.

# I.

The defendants were convicted of conspiracy to possess cocaine with the intent to distribute in violation of 21 U.S.C. §§ 841 and 846. During their trial, the government offered the testimony of Anthony Rashid, a leader in the drug conspiracy. During that testimony, Assistant United States Attorney Mark Miller asked Rashid whether he had received any consideration in exchange for his cooperation with the government. Rashid responded by stating that FBI Special Agent Mark Foxall had promised him two sentence reductions. Rashid acknowledged that prior to the defendants' trial he had received a sentence of 120 months' imprisonment, reduced from a sentencing range of 360 months to life on the basis of the government's motion. He testified that the second reduction was to be granted after he testified against the defendants. Miller asked Rashid whether he understood that the United States Attorney's Office would challenge any petition for a second reduction. Rashid stated that he understood that, but that he intended to litigate the matter at a later time.

Cashaw was sentenced to 360 months' imprisonment, and Jones and Palmer each received 235-month sentences. Following the defendants' trial, Rashid filed a request for an additional sentence reduction. Contrary to the position it had asserted during the defendants' trial, the government did not oppose Rashid's request, and his sentence was reduced to 60 months' imprisonment.

Defendants raised numerous issues in their appeal from their convictions and sentences, including a challenge by Cashaw to the four-level managerial enhancement that had been applied to him, and a claim by all three defendants alleging that the government had engaged in misconduct by failing to oppose Rashid's request for a second reduction of his sentence. With the exception of Cashaw's challenge to his sentence, we affirmed the convictions and sentences. With respect to the claim of prosecutorial misconduct, we found that the defendants had "presented no evidence to support their bare assertion that the government had no intention of opposing

-3-

Rashid's second reduction." United States v. Jones, 160 F.3d 473, 478 (8th Cir. 1998). Accordingly, we concluded that defendants' claim of prosecutorial misconduct entitled them to no relief. Id.

We accepted as true the government's explanation that it had filed no objection to Rashid's motion for a second reduction because of the unequivocally expressed intention by Rashid's sentencing judge (the Honorable Scott O. Wright) to grant the reduction on his motion and the judge's refusal to brook any opposition to such a course of action, and because of the government's inability to locate Foxall, who had been dismissed by the FBI for irregularities in dealing with a confidential informant, which left the government with no evidence to refute Rashid's claim that he had been promised a second reduction. Id.

Although we recognized that a mere disparity in the sentences imposed upon co-conspirators does not confer upon the district court the discretion to grant a downward departure, we held that "where the government's conduct directly results in prejudice to a defendant, which is significant enough to take the case out of the heartland of the guidelines, the district court has the discretion to impose a downward departure." Id. at 484 (Heaney & Bright, JJ., concurring specially). In vacating Cashaw's sentence and in remanding his case for resentencing, we stated that "if the district court on remand determines that any of the appellants were directly prejudiced by the government's conduct significantly enough to take the case out of the heartland of the Sentencing Guidelines, it may exercise its discretion in determining whether to grant an appropriate downward departure." Id.

## II.

The judge who had presided over the defendants' trial and sentencing, the Honorable Joseph E. Stevens, Jr., died shortly after the entry of our judgment. Accordingly, the case was assigned on remand to Judge Sachs, who held a two-day

evidentiary hearing, at which the defendants called as witnesses AUSA Miller, FBI Special Agent Bryan Underwood, and former Special Agent Mark Foxall (misspelled as "Foxhall" in our prior opinion).

AUSA Miller testified that at the time of defendants' trial it was his intention to oppose Rashid's request for a second reduction of his sentence. By the time Rashid filed his motion for reduction of sentence, Miller had learned from Underwood, who was the case agent on Rashid's file, that Foxall had been discharged because of irregularities involving an informant. Because Foxall had been transferred to Los Angeles prior to his discharge, Miller made inquiry of Underwood, who informed him that the Los Angeles office of the FBI had told him (Underwood) that Foxall was no longer working there and that they did not know where he was. Although both Miller and Underwood knew that Foxall was from Omaha, Nebraska, they made no effort to determine whether he was living there. Miller testified that he had made no attempt to locate Foxall in Omaha because he knew that he was not going to call him as a witness in Rashid's sentence-reduction hearing. In Miller's words,

> I would say he [Foxall] was absolutely, at least from the information I had would have been absolutely discredited. He would have been having problems with an informant, doing things with informants that he shouldn't have done, which would have lent credibility to Mr. Rashid's statement he is making promises and doing things behind other people's back. That was a major concern of mine.

Miller went on to testify that

> [I]t seemed that Judge Wright was predisposed to the motion anyway. The last thing I wanted was either a factual finding that he [Foxall] was an incredible witness which would open the flood gate to every other person he ever was involved in in a prosecutorial sense, that I would see

-5-

the flood gate, the number of motions coming in saying Foxall promised me this, Foxall promised me that. I wanted to shut that off also.

He further testified that his decision not to oppose Rashid's request for a further reduction in his sentence "was based on our inability to meet his charge that a second Rule 35 had been promised to him. It was strictly a litigative [sic] decision."

Miller testified that he did not appear at the hearing on Rashid's motion, instead asking AUSA Christina Tabor to appear and instructing her not to oppose the motion. In Miller's words, "I probably told her let's cut our losses and get out of this." In response to the district court's inquiry as to Miller's recollection of what he had told Ms. Tabor, Miller responded, "I don't have any recollection. It would not surprise me, Your Honor, if I said just go with whatever Judge Wright seems that he wants to go with and let's go home." Although Miller acknowledged that the Federal Rules of Criminal Procedure do not authorize a defendant to file a motion for a reduction of sentence under Rule 35(b), he testified that he did not instruct Ms. Tabor to file an appeal from Judge Wright's order granting the sought-for reduction, saying, "we did not want to appeal this."

Foxall testified that he did not believe that he had made any kind of promise to Rashid that he would be given a second sentence reduction in return for his testimony at defendants' trial, saying that perhaps Rashid had misinterpreted Foxall's statement that he would make Rashid's continued cooperation known to the assistant United States attorney. Foxall further testified that following his departure from the FBI in Los Angeles, he returned to Omaha, Nebraska, where his father and his brother, both of whom knew where Foxall was living, resided.

Agent Underwood, who was present during most of Foxall's interview with Rashid, testified that Foxall had discussed with Rashid the possibility of a further

reduction in his sentence in return for his cooperation but that no out-and-out promise was made to that effect. In Underwood's words,

> It was clear that Mark Foxall tried to implant the possibility that that would in fact occur; but as I said, an out and out promise was not made. I think Anthony Rashid took that inference or the suggestion that Foxall would recommend such a thing to the U.S. Attorney's office as a clear-cut promise that it would in fact happen. That's what I think went on here.

The district court concluded that under the terms of our remand it could grant a downward departure only if the defendants could show that they had suffered prejudice, which the district court equated with actual harm, "in the sense of a longer sentence than would have been in the absence of the government's conduct." The district court found that because the defendants had made no such claim, no departure was warranted under the district court's interpretation of our remand. Alternatively, the district court found insufficient prosecutorial misconduct to warrant the imposition of sentences more proportional to that ultimately received by Rashid. The district court found that although Foxall had not made an out-and-out promise to Rashid that he would be given a second reduction in his sentence, "it is more than likely that Foxall aggressively held out likely incentives, including a possible second reduction in the sentence." The court also found that Rashid's counsel was probably present during Foxall's conversation with Rashid and that it was probable that counsel would have cautioned Rashid that an agent's recommendation does not guarantee that the government will file a motion for downward departure or that the sentencing judge will grant it if made. The court concluded that Foxall had "either kept within the bounds of appropriate caution (a possibility but not a probability) or Rashid's counsel adequately advised him (a probability)."

The district court found that although it believed that Rashid's motion for a second reduction should have been denied, the reduction was probably the result of

a judicial mistake resulting from an inadequacy of information. Accordingly, the district court concluded that the defendants had not established an adequate basis for a downward departure in their sentences attributable to misconduct by Foxall.

With respect to defendants' claim of prosecutorial misconduct, the district court found that at the time he represented to the jury that he would contest Rashid's request for a second reduction, AUSA Miller honestly intended to do so and that his breach of that assurance in itself was not prejudicial to the defendants nor inappropriate trial conduct.

The district court found that, contrary to what we had been led to believe in the first appeal, Miller had made no serious effort to find Foxall, whose whereabouts would not have been that difficult to ascertain. The district court found that Miller had "engaged in some unwise speculation without qualifying his words," and that "there was some runaway advocacy in the language [he] used." The district court concluded that at most Miller's conduct in this regard would merit judicial admonishment or possibly some very limited sanctions, neither of which would be pertinent to defendants' claims. Accordingly, the court held that defendants had not established the existence of prosecutorial misconduct sufficient to entitle them to a downward departure in their sentences.

Turning to the government's failure to appeal the second sentence reduction granted to Rashid, the district court found that although it seemed that the reduction was most unwarranted, the decision not to appeal "had fairly solid common sense grounds," that it could not in and of itself be considered to be prosecutorial misconduct, and that it was an appropriate exercise of prosecutorial discretion. Accordingly, the district court concluded that, even if there is a governmental-misconduct exception to the rule forbidding departures to achieve internal proportionality, the circumstances established by the testimony at the hearing did not confer upon it discretion to grant defendants a downward departure. The district

court ruled that to the extent it had been granted discretion to depart, it did not believe that defendants merited a proportionality departure.  The court concluded that the pertinent comparison was not only with Rashid and several others who may have been insufficiently punished, but also with several other named defendants who had received lengthy sentences in drug cases.  In doing so, the court commented that "[t]his case may very well typify what I have frequently noted, that the most culpable defendants are frequently the most sophisticated and knowledgeable persons in a drug operation and thus may receive the most lenient treatment in our sentencing system."

The district court concluded its analysis by ordering that, with the exception of Cashaw's motion, which it granted in accordance with our directions, the motions for departure be denied.[4]

The court then entered a separate order denying the defendants' alternative motions for new trial, ruling that our remand had not included a direction to consider such a motion and that in any event the defendants had not presented any new evidence that would justify a new trial.

## III.

The defendants contend on appeal that the district court erred in denying their motions for new trial based on prosecutorial misconduct.  Cashaw contends that he was sentenced in violation of Apprendi v. New Jersey, 528 U.S. 1018 (2000).  Finally, all three defendants argue that §§ 841 and 846 are unconstitutional.

---

[4]After eliminating the four-level manager enhancement, the district court subsequently resentenced Cashaw to 292 months' imprisonment.

## A.

The defendants reassert their contention from the prior appeal that the government's failure to oppose Rashid's reduction motion amounted to prosecutorial misconduct and entitled them to a new trial. The clear language of our opinion, however, limited the remand to the issues of managerial enhancement and the possibility of a downward departure based on the conduct of the prosecution. Jones, 160 F.3d at 484. The question of prosecutorial misconduct as it relates to the request for a new trial was resolved against the defendants in the first appeal and is now law of the case. Under the law of the case doctrine "'a decision in a prior appeal is followed in later proceedings unless a party introduces substantially different evidence, or the prior decision is clearly erroneous and works a manifest injustice.'" United States v. Bartsh, 69 F.3d 864, 866 (8th Cir. 1995) (quoting United States v. Callaway, 972 F.2d 904, 905 (8th Cir. 1992) (per curiam)).

The defendants argue that because the new evidence introduced at the evidentiary hearing held on remand was substantially different from that upon which their first appeal rested, their new trial motions are not barred by the law of the case doctrine. Although we do not find this contention to be persuasive, we will accept it for the purposes of this case, for we conclude that the district court did not abuse its discretion in denying the motions for new trial.

It is clear from the summary of the evidence outlined above that the district court carefully and thoroughly analyzed the evidence that the defendants produced at the evidentiary hearing held on remand. We find no clear error in any of the district court's findings, particularly with respect to its finding that at the time he made that representation to the jury, AUSA Miller honestly intended to contest Rashid's request for a second reduction in his sentence. Although we agree with the district court's characterization of Miller's representations to our court regarding his attempts to locate Foxall as "unwise speculation" and "runaway advocacy" in the

language he used, we conclude that his overstatement regarding the extent of those attempts does not undercut his testimony at the evidentiary hearing that he would not have called Foxall as a witness in any event.

Likewise, we agree with the district court that although the second reduction in Rashid's sentence appears to have been unwarranted, the decision not to appeal that reduction was an appropriate exercise of prosecutorial discretion, however much we might question the decision not to correct what quite clearly appears to have been legal error on the part of Rashid's sentencing judge. In so holding, we cannot but take note of the fact that the government seems quick enough to appeal from alleged sentencing errors the seriousness of which pale in comparison to the error in Rashid's case.

We also agree with the district court's findings and conclusions that any misconduct by former agent Foxall did not warrant the grant of a new trial.

To the extent that the defendants have preserved their claim that the district court erred in not granting them a downward departure in their sentences, we hold that in denying the requested reduction the district court did not abuse whatever discretion our remand conferred upon it. What we have said about the district court's ruling on the motion for new trial applies with equal force to its findings and conclusions regarding the request for a downward departure.

**B.**

Cashaw's <u>Apprendi</u> argument also fails. Although we acknowledge that <u>Apprendi</u> as a legal precedent did not exist before the prior appeal in the present case, that did not excuse Cashaw from the burden of raising an <u>Apprendi</u>-like argument in the first appeal. <u>See</u> <u>United States v. Moss</u>, 252 F.3d 993, 1001-02 (8th Cir. 2001) (barring newly raised <u>Apprendi</u> argument in context of § 2255 motion). Cashaw

-11-

argues that the sentencing issue was litigated below. Although Cashaw did present a challenge in his first appeal to "the district court's findings regarding its drug quantity determinations and the credibility of the witnesses it relied upon," Jones, 160 F.3d at 480, he did not raise a challenge to the district court's authority to make the determinations. Thus, the argument he now seeks to raise was waived.

## C.

Finally, the defendants' contention that the Supreme Court's Apprendi decision rendered §§ 841 and 846 unconstitutional is without merit. Although we have not considered the specific argument advanced by the defendants, our sister circuits have rejected it. United States v. Buckland, 277 F.3d 1173; 1178-82 (9th Cir. 2002) (en banc); United States v. Cernobyl, 255 F.3d 1215, 1218-19 (10th Cir. 2001); United States v. Brough, 243 F.3d 1078, 1079 (7th Cir. 2001). Moreover, we have rejected previous facial challenges to the constitutionality of these statutes, and we see nothing in the defendants' theory that should compel a different outcome for these defendants. United States v. Vaca, 289 F.3d 1046, 1049 (8th Cir. 2002); United States v. Woods, 270 F.3d 728, 729 (8th Cir. 2001).

The defendants argue that prior to the holding in Apprendi, the consensus among the circuit courts was that Congress intended for § 841(b) penalties to be sentencing factors determined by a judge by a preponderance of the evidence standard. Therefore, their theory posits, the Supreme Court's Apprendi ruling rendered § 841 unconstitutional because courts cannot now abandon their pre-Apprendi findings on Congressional intent and that intent was unconstitutional. The Courts of Appeals that have addressed this specific issue have pointed out, however, that the practice of determining § 841(b) drug quantities by judge rather than by jury was based on judicial interpretation of the labeling of the statute rather than reliance on the statutory language or the legislative history. Buckland, 277 F.3d at 1179-80; Cernobyl, 255 F.3d at 1218-19; Brough, 243 F.3d at 1079; cf. Woods, 270 F.3d at

729-30 (stating that <u>Apprendi</u> was concerned not with statutory structure but sentencing).  In the absence of such language or history that indicates that Congress intended determination by judge rather than by jury, nothing in <u>Apprendi</u> requires a finding that § 841 is unconstitutional, and we hold that it is not.

## Conclusion

This has been a troublesome case.  For the reasons stated in our opinion in defendants' first appeal, we have no question about the sufficiency of the evidence to support their convictions, nor about the manner in which the government secured those convictions.  Rather, our disquiet stems from the allegations of prosecutorial misconduct levied by defendants regarding the failure of the government to object to Rashid's request for a second reduction in his sentence and its failure to appeal from what clearly appears to have been the unwarranted grant of the requested reduction.  Section 5K1.1 of the United States Sentencing Guidelines provides for a reduction of sentence based upon a defendant's substantial assistance only upon motion by the government. There is no provision in Rule 35(b) of the Federal Rules of Criminal Procedure for a motion by a defendant for a reduction based upon a claim of substantial assistance to the government. There is nothing in the record to suggest that the government's refusal to make a motion for a second reduction in Rashid's sentence was based upon any improper or unconstitutional motive. In a word, then, it appears that Rashid was the beneficiary of an additional reduction to which he was not entitled.  Accordingly, at first blush AUSA Miller's decision not to oppose the request for a second reduction and not to appeal from Judge Wright's order granting that request seems questionable to us, as it did to the district court.  Nevertheless, as we have stated above, we cannot say that the district court clearly erred in finding that Miller's decision not to appeal Judge Wright's order was an appropriate exercise of prosecutorial discretion.

In sum, then, the fact that Anthony Rashid's ultimate sentence may have been both unduly lenient and extralegally imposed does not mean that defendants' sentences were either too severe or improperly imposed. The record developed at the evidentiary hearing does not demonstrate that the defendants were directly prejudiced by the government's conduct, and thus this case does not fall outside the heartland of the sentencing guidelines. Consequently, the district court did not abuse its discretion in denying the defendants the relief they sought.

The orders appealed from are affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.