# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-1143

_____

United States of America,        *
                                *

          Appellee,             *

                                     *

      v.                        *       Appeal from the United States

                                     *       District Court for the District of

Jonathan Wayne Larrabee,      *       South Dakota.

                                     *

         Appellant.            *

_____

Submitted: November 14, 2005
Filed: February 3, 2006

_____

Before MURPHY, McMILLIAN[1] and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

John Wayne Larrabee pled guilty to second degree murder of Sylvan George Beautiful Bald Eagle ("Bald Eagle") within Indian country in violation of 18 U.S.C.

_____

[1]The Honorable Theodore McMillian died on January 18, 2006. This opinion is being filed by the remaining judges of the panel pursuant to 8th Cir. Rule 47E.

§§ 1111 and 1153.  The district court[2] sentenced Larrabee to 363 months' imprisonment followed by five years' supervised release and ordered Larrabee to pay restitution in the amount of $5,119.14.  Larrabee argues on appeal that his sentence is unreasonable.  For the reasons discussed below, we affirm.

## I. BACKGROUND

Larrabee and his half-brother and co-defendant, Revis Allen Hill, were two of the four members of a group known as the "Hill Boys."  The Hill Boys had a reputation for assaulting citizens of Wakpala, South Dakota, on the Standing Rock Sioux Indian Reservation.  Bald Eagle was among those in Wakpala who signed a community petition to banish the Hill Boys from the Reservation. Larrabee was upset that Bald Eagle signed the petition.

Larrabee and Hill began drinking on the evening of February 16, 2004, and continued into the early morning hours.  Sometime during the early morning of February 17, they went to the home of Donovan Guy Sam in Wakpala.  Bald Eagle, age 52, was seated inside the house.  Larrabee confronted Bald Eagle about the petition and pushed Bald Eagle's head.  Bald Eagle told Larrabee, "I don't want to fight; I'm too old to fight."  Then, while Bald Eagle still was seated, Larrabee hit him in the head with a wood log.  Sam heard a "loud pop" and observed Bald Eagle go into what he believed was a seizure.  Hill restrained Larrabee from striking Bald Eagle again.  Hill and Sam attempted to stop Bald Eagle's bleeding, and Hill moved Bald Eagle to the bedroom.  Larrabee, Hill and Sam then continued to drink in the living area.  Sam feared that the other two would turn on him. Without provocation, Hill hit Sam in the face, and Larrabee kicked Sam in the ribs and kneed him in the

[2]The Honorable Charles B. Kornmann, United States District Judge for the District of South Dakota.

nose. Then Sam indicated that he was going to find help, but Larrabee and Hill prevented him from leaving the house. Finally, Larrabee cut Sam on the neck with a knife, causing Sam to black out.

Sometime after Larrabee and Hill had departed from Sam's house on the morning of February 17, Pat Yellow stopped at the house and knocked on the door. After receiving no reply, Yellow entered the house and found Bald Eagle and Sam surrounded by blood and blood-soaked towels and Bald Eagle unconscious. Yellow called the police and an ambulance, which took Bald Eagle and Sam to the hospital. Sam was discharged from the hospital after receiving stitches. Bald Eagle never regained consciousness and died on February 19 from the head injury.

Meanwhile, after Larrabee and Hill left Sam's house on the morning of February 17, they obtained a ride from their aunt, Valerie Hill, to a casino. On the way, Larrabee and Hill described what they had done at Sam's house and laughed about it. At the casino, Larrabee and Hill saw their mother, Rose Jordan, who informed them that Bald Eagle and Sam had been taken to the hospital and that Larrabee and Hill were wanted for questioning. When Valerie Hill indicated that the men should surrender themselves, Larrabee and Hill laughed at her and convinced her to drive them approximately 300 miles to Fort Totten, North Dakota. Larrabee and Hill were arrested in Fort Totten on February 20.

Using the version of the sentencing guidelines in effect at the time Larrabee committed the offense, *see* U.S.S.G. § 1B1.11(b)(1), the United States Probation Office calculated a total offense level of 30, taking into account a base offense level of 33 for violation of 18 U.S.C. § 1111, *see* U.S.S.G. § 2A1.2 (2003), and a three-level downward adjustment for acceptance of responsibility, *see* U.S.S.G. § 3E1.1 (2003). Larrabee's criminal history placed him in criminal history category V.

The corresponding guidelines range was 151 to 188 months' imprisonment. During Larrabee's post-*Blakely*, pre-*Booker* sentencing, the district court found that Larrabee obstructed justice and stated that, if the sentencing guidelines were applicable, the total offense level would be 32 with a corresponding range of 188 to 235 months. The district court then noted that the guidelines were unconstitutional and, after consideration of the relevant factors, sentenced Larrabee to 363 months' imprisonment.

## II. DISCUSSION

We review the reasonableness of the sentence imposed for abuse of discretion. *United States v. Haack*, 403 F.3d 997, 1003 (8th Cir.), *cert. denied*, 126 S. Ct. 276 (2005). A sentence may be unreasonable if the district court failed to consider a relevant factor that should have received significant weight, gave significant weight to an improper or irrelevant factor, or considered only appropriate factors but committed a clear error of judgment by imposing a sentence that lies outside the limited range of choice dictated by the facts. *Id.* at 1004. The relevant factors are those identified by Congress in 18 U.S.C. § 3553(a). *See United States v. Booker*, 125 S. Ct. 738, 764-66 (2005). Just as "[a]n extraordinary reduction must be supported by extraordinary circumstances," *United States v. Dalton*, 404 F.3d 1029, 1033 (8th Cir. 2005) (analyzing a downward departure of 75 percent), so must an extraordinary upward variance be supported by extraordinary circumstances. *See United States v. Johnson*, 427 F.3d 423, 426-27 (7th Cir. 2005) ("Sentences varying from the guidelines range . . . are reasonable so long as the judge offers appropriate justification under the factors specified in 18 U.S.C. § 3553(a). How compelling that justification must be is proportional to the extent of the difference between the advisory range and the sentence imposed.") (citing *United States v. Dean*, 414 F.3d 725, 729 (7th Cir. 2005)).

We consider the upward variance in this case of 54 percent from the top of the advisory guidelines range to be significant. However, the district court's stated justification for the sentence convinces us that the district court did not exceed the permissible bounds of its discretion and, therefore, the sentence is reasonable. Although the district court did not explicitly list the § 3553(a) factors, the record reflects that the district court took into account the relevant § 3553(a) factors and adequately explained why it chose the sentence of 363 months. *See United States v. Dieken*, 432 F.3d 906, 909 (8th Cir. 2006) ("[W]e do not require a district court to categorically rehearse each of the section 3553(a) factors on the record when it imposes a sentence as long as it is clear that they were considered.").

First, the district court considered the sentencing guidelines range, *see* § 3553(a)(4), when it calculated the sentencing guidelines offense level and criminal history category and determined the corresponding sentencing guidelines range. Next, the district court considered "the nature and circumstances of the offense and the history and characteristics of the defendant." § 3553(a)(1). The court commented that Bald Eagle was not looking for a fight and had no opportunity to defend himself. The court also noted that Larrabee intended to hit Bald Eagle very hard and knew the injury was serious. Moreover, Larrabee failed to assist Bald Eagle in any way, choosing instead to continue drinking, to assault Sam and to prevent him from getting help, and eventually to go to a casino and to flee to North Dakota to avoid authorities.

The district court continued to discuss Larrabee's history and characteristics as it recounted in detail Larrabee's extensive criminal history commencing in 1990. In calculating a criminal history category of V, the district court included convictions for assault with a dangerous weapon, domestic violence-simple assault, petty theft, theft and two convictions for simple assault. The court also added two points because the murder of Bald Eagle was committed less than two years after Larrabee's release from custody for another sentence. In arriving at the ultimate sentence, the district

court considered additional criminal conduct described in the Presentence Investigation Report that did not contribute to Larrabee's criminal history category for purposes of calculating the guidelines range. This conduct included convictions in the Standing Rock Sioux Tribal Court for aggravated assault, kidnapping and simple assault; convictions for indecent exposure, petty theft, reckless driving, disorderly conduct, false impersonation to a law enforcement officer, driving under the influence, simple assault and reckless driving; and guilty pleas to possession of alcohol by a minor. The district court noted that based on his numerous past acts of violence, the murder of Bald Eagle was not out of character for Larrabee.

The record also reflects that the district court took into account the need for the sentence imposed "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." § 3553(a)(2)(A). The court expressed concern about the level of violence and of alcohol and drug abuse on Native American reservations. The court stated that Larrabee had not benefitted from his previous federal sentence of 63 months' custody followed by supervised release for assault with a dangerous weapon or his attendance at the state training school, the Flandreau Indian School, or a treatment center for chemical dependency. Immediately before imposing sentence, the court stated, "I do think that the defendant has a long record of violence and that he needs to be confined for a long period of time to protect the public. It may not be sufficient sentence in the eyes of the victim's family, probably isn't." Thus, it is clear that the court also considered the need for the sentence imposed "to protect the public from further crimes of the defendant." § 3553(a)(2)(C). Finally, the district court considered the need "to provide restitution to any victims of the offense," § 3553(a)(7), and accordingly ordered Larrabee to pay restitution of $5,119.14.

We find that the district court properly "considered and weighed the § 3553(a) factors in addition to the recommended guidelines range and stated its reasons for

choosing the particular sentence." *United States v. Hadash*, 408 F.3d 1080, 1084 (8th Cir. 2005). The reasons were appropriate and sufficient to justify the significant upward variance in this case. Therefore, the district court did not abuse its discretion in sentencing Larrabee to 363 months' imprisonment.

In assessing the reasonableness of Larrabee's sentence, we also find persuasive the amendments to the sentencing guidelines which became effective on November 1, 2004, subsequent to the date of Larrabee's offense. These amendments to the applicable guideline, § 2A1.2, demonstrate that the sentence of 363 months does not lie outside the "limited range of choice dictated by the facts of the case." *United States v. Hawk Wing*, No. 05-2263, slip op. at 14 (8th Cir. Jan. 6, 2006) (quoting *Haack*, 403 F.3d at 1004). We recognize that "retrospective application of the Guidelines implicates the ex post facto clause." *United States v. Bell*, 991 F.2d 1445, 1447 (8th Cir. 1993); *see also* U.S.S.G. § 1B1.11(b)(1). Here we do not apply the amended guidelines, but reference them because they are instructive as to the range of reasonableness. *See Johnson*, 427 F.3d at 427 ("Viewing the *current* version of [the guidelines] as one benchmark to gauge the reasonableness of [the defendant's] sentence, the sentence [the defendant] received would fall *within* the advisory guidelines range instead of substantially above it.") (citations omitted).

In order to address both new and longstanding proportionality concerns, § 2A1.2 was amended to increase the base offense level for second degree murder from 33 to 38. *See* U.S.S.G. app. C, amend. 663 (effective Nov. 1, 2004). A base offense level of 38 with criminal history category V corresponds to a range of 360 months to life imprisonment. Even taking into account the adjustments for acceptance of responsibility and obstruction of justice, a total offense level of 37 and criminal history category V results in a sentencing range of 324 to 405 months. Had Larrabee committed the crime in November of 2004, a sentence of 363 months would have been well within the applicable guidelines range and, therefore, presumptively

reasonable. *See United States v. Tobacco*, 428 F.3d 1148, 1151 (8th Cir. 2005) ("When a defendant's sentence is within the guidelines range it is presumptively reasonable.").

In addition, the 2004 amendments added application note 1 to § 2A1.2, which states that an upward departure for extreme conduct may be warranted "[i]f the defendant's conduct was exceptionally heinous, cruel, brutal, or degrading to the victim." U.S.S.G. § 2A1.2, cmt. n.1 (2004). "Examples of extreme conduct include torture of a victim, gratuitous infliction of injury, or prolonging of pain or humiliation." U.S.S.G. § 5K2.8 (2004). Had the 2004 amendments applied to this case, an upward departure from level 37 may have been warranted based on Larrabee's gratuitous infliction of injury by brutally striking Bald Eagle on the head with a log without provocation and after Bald Eagle told Larrabee that he was too old to fight. An upward departure also may have been justified by Larrabee's heinous conduct of not only failing to get help for Bald Eagle but also of actively preventing Sam from doing so, and then assaulting Sam and cutting his neck with a knife. As the district court noted, this case shows Larrabee to be "a very cold-blooded individual."

## III. CONCLUSION

We conclude that Larrabee's sentence is reasonable and affirm the judgment of the district court.

_____