# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

No. 05-4414

| | |
|---|---|
| United States of America, | * |
| | * |
| Appellee, | * |
| | * Appeal from the United States |
| v. | * District Court for the District |
| | * of South Dakota. |
| William T. Carter, | * |
| | * |
| Appellant. | * |

Submitted: September 26, 2006
Filed: June 18, 2007

Before ARNOLD, BYE, and MELLOY, Circuit Judges.

ARNOLD, Circuit Judge.

William Carter was originally sentenced to 360 months in prison after being convicted of sexual abuse of a minor and related crimes. We affirmed his convictions but remanded for resentencing. *See United States v. Carter*, 410 F.3d 1017 (8th Cir. 2005) (*Carter I*). After a hearing, the district court[1] sentenced Mr. Carter to 295 months' imprisonment. Mr. Carter appeals, contending that the district court violated the *ex post facto* clause of the Constitution by imposing an enhancement under U.S.S.G. § 4B1.5(b)(1), and that it erred by imposing an obstruction-of-justice

---

[1]The Honorable Charles B. Kornmann, United States Judge for the District of South Dakota.

enhancement without making sufficient factual findings, *see* U.S.S.G. § 3C1.1. We affirm.

## I.

We review Mr. Carter's *ex post facto* claim *de novo. See United States v. Mashek*, 406 F.3d 1012, 1016 (8th Cir.2005). The *ex post facto* clause is violated when a law defining a crime or increasing punishment for a crime, *see Collins v. Youngblood*, 497 U.S. 37, 43 (1990), is applied to events that occurred before its enactment, to the "disadvantage" of the offender, *Weaver v. Graham*, 450 U.S. 24, 29 (1981). In *Miller v. Florida*, 482 U.S. 423, 435-36 (1987), the Supreme Court held that retroactive application of state sentencing guidelines that subjected offenders to longer sentences than they would have received at the time the crime was committed, violated the *ex post facto* clause applicable to the states, *see* U.S. Const., art. I, § 10, cl. 1. And we have held that the *ex post facto* clause applicable to Congress is similarly violated by retroactive application of a more onerous federal sentencing guideline. *United States v. Bell*, 991 F.2d 1445, 1448 (8th Cir. 1993); *see* U.S. Const. art. I, § 9, cl. 3.

Initially, we note that since the Supreme Court decided *United States v. Booker*, 543 U.S. 220 (2005), at least one of our sister circuits has held that the *ex post facto* clause does not apply to the now-advisory guidelines. *See United States v. Demaree*, 459 F.3d 791, 794 (7th Cir. 2006), *petition for cert. filed*, No. 06-8377 (U.S. Dec. 11, 2006); *see also United States v. Barton*, 455 F.3d 649, 655 n. 4 (6th Cir. 2006). But in a case decided after *Booker*, we "recognize[d] that 'retrospective application of the Guidelines implicates the *ex post facto* clause,' " though we took into account post-offense amendments to the guidelines when determining the overall reasonableness of the defendant's sentence. *United States v. Larrabee*, 436 F.3d 890, 894 (8th Cir. 2006) (quoting *Bell*, 991 F.2d at 1448). Given our decision in *Larrabee*, we will proceed to address Mr. Carter's *ex post facto* claim.

The guidelines themselves refer to the *ex post facto* clause: under U.S.S.G. § 1B1.11(a) and (b)(1), courts are directed to apply the version of the guidelines in effect on the date of sentencing unless to do so would violate the *ex post facto* clause, in which case the guidelines in effect on the date of the crime should be used. The so-called one-book rule requires that the "Guidelines Manual in effect on a particular date be applied in its entirety." U.S.S.G. § 1B1.11(b)(2). And the guidelines specify that "[i]f the defendant is convicted of two offenses, the first committed before, and the second after, a revised edition of the Guidelines Manual became effective, the revised edition of the Guidelines Manual is to be applied to both offenses." U.S.S.G. § 1B1.11(b)(3).

In this appeal, Mr. Carter argues that in his case, by applying the one-book rule, *see* U.S.S.G. § 1B1.11(b)(2), and using the date when the last crime was committed to determine which edition of the guidelines to apply, *cf.* U.S.S.G. § 1B1.11(b)(3), the district court violated the *ex post facto* clause. According to the defendant, the court violated the clause by sentencing him under a version of the guidelines that included U.S.S.G. § 4B1.5(b)(1), an enhancement for repeat sex-offenders that went into effect on November 1, 2001, *see* U.S.S.G. app. C, amend. 615, thereby increasing his offense level and guideline sentencing range "for the three most serious pre-November, 2001 grouped Counts." Mr. Carter argues that even if, as we held in *Carter I*, the evidence supported a finding that one of his crimes (Count II) occurred after November 1, 2001, he was unconstitutionally disadvantaged by the application of § 4B1.5(b)(1) to the three more serious crimes that occurred before that date and could not be grouped with Count II. *Cf. United States v. Ortland*, 109 F.3d 539, 547 (9th Cir. 1997).

The government maintains that Mr. Carter's claim is precluded by the law-of-the-case doctrine because of our ruling against him on an *ex post facto* claim in *Carter I*, 410 F.3d at 1026-27. In general, "the law-of-the-case doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same

issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983); *see also United States v. Bartsh*, 69 F.3d 864, 866 (8th Cir. 1995).

At the first sentencing hearing, the district court carefully followed the provisions of § 1B1.11. The court first rejected the 2003 guidelines manual in effect at that time based on *ex post facto* concerns, *see* § 1B1.1(a), (b)(1), explaining that the then-current manual might produce a higher sentence because it included a new prohibition on downward departures for sexual crimes and eliminated a multiple-victim requirement for an enhancement under § 4B1.5(b). Then the court referred to the one-book rule, *see* § 1B1.11(b)(2), and the need to use the guidelines manual in effect when the last crime was committed, *see* § 1B1.11(b)(3). Following these provisions, the district court applied the manual that "went into effect on November 1, 2001, in between the defendant's offenses of conviction" (though it mistakenly referred to it as the 2002, rather than the 2001, manual). The court found generally that "at least one" of Mr. Carter's crimes occurred after § 4B1.5(b)(1) went into effect (November 1, 2001), and it also relied on the indictment to determine that Count VII occurred after that date.

In his first appeal, Mr. Carter maintained in his brief that the district court erred by enhancing his sentence under § 4B1.5(b)(1) "where the prosecution's evidence failed to prove that any of the charged offenses" occurred after that enhancement went into effect. He asserted that the "trial testimony did not prove an offense" after that date and also contended that the district court should have relied on the evidence, rather than the indictment, to determine when Count VII occurred. Significantly, Mr. Carter did not challenge the constitutionality of § 1B1.11(b)(2) or § 1B1.11(b)(3) or the district court's decision to calculate his sentence by applying only "one book" of sentencing guidelines, *i.e.*, the one in effect when his last crime was committed. And though he now contends that the court should not have relied on the date of a lesser crime to increase his sentence for earlier more serious crimes that could not be grouped with the later crime, in his first appeal he mentioned neither the relative

-4-

seriousness of the crimes nor their groupability. We rejected Mr. Carter's previous *ex post facto* claim in *Carter I*, 410 F.3d at 1027, because evidence regarding Count II supported the district court's finding that at least one of the crimes occurred after November 1, 2001. We noted that the victim in Count II, who was a minor at the time of the crime, testified that Mr. Carter had sexual contact with her in December, 2001, and, when pressed on cross-examination, estimated the date as "around November 2, 2001." After remand, the district judge reiterated that at least one of Mr. Carter's crimes occurred after § 4B1.5 went into effect, basing his finding on the "trial testimony ... that the contact happened around November 2, 2001."

We agree with Mr. Carter's contention in his reply brief that the law-of-the case doctrine does not apply because we "did not issue a legal ruling" in *Carter I* addressing whether the *ex post facto* clause "prohibits using a single less serious, later offense to justify the retroactive application" of a guideline to increase the sentencing range "for earlier ungrouped more serious offenses." But we did not address the issue because Mr. Carter did not raise it, and we conclude that the issue has been forfeited.

Mr. Carter asserts that he did not raise the argument earlier because at the first sentencing the district court specifically referred only to Count VII and did not mention Count II when deciding to apply the 2001 guidelines. We believe, however, that the argument is not dependent on the court mentioning Count II, but is a challenge to the district court's determination that the 2001 guidelines applied because at least one crime occurred after November 1, 2001. And Mr. Carter's rationale for not making his current *ex post facto* argument is particularly unpersuasive because Counts II and VII are virtually identical: they both charge Mr. Carter with abusive sexual contact with a minor in violation of 18 U.S.C. § 1153, on dates after November 1, 2001, and neither crime was groupable with the earlier more serious offenses, *see* U.S.S.G. § 3D1.2 cmt. (n. 3, 4). Therefore we believe that Mr. Carter's argument would be equally available regardless of whether the district court referred to Count II or Count VII when determining which version of the guidelines to apply.

Not until this appeal did Mr. Carter argue that the *ex post facto* clause precluded the application of the 2001 guidelines even if one of his crimes took place after November 1, 2001. This is not simply a case where the defendant appeals an issue that he or she did not present to the district court. *Cf. United States v. Rees*, 447 F.3d 1128, 1130 (8th Cir. 2006). Here Mr. Carter did not raise this issue at his first sentencing, in his appeal from that sentence, or at resentencing. We do not permit piecemeal appeals, and we choose not to afford Mr. Carter an opportunity (unavailable to other defendants) to raise a new issue at this late date merely because his case was remanded on other grounds. *See United States v. Palmer*, 297 F.3d 760, 767 (8th Cir. 2002); *United States v. Montoya*, 979 F.2d 136, 138 (8th Cir. 1992); *United States v. Fiallo-Jacome*, 874 F.2d 1479, 1481-83 (11th Cir. 1989). We conclude that Mr. Carter has forfeited his current *ex post facto* claim, and thus we decline to address it on the merits.

## II.

Mr. Carter next argues that the district court failed to make adequate findings to support an obstruction-of-justice enhancement based on perjury, *see* U.S.S.G. § 3C1.1. Since Mr. Carter objected to the enhancement, the court was required to "review the evidence and make independent findings necessary to establish ... obstruction of justice." *United States v. Dunnigan*, 507 U.S. 87, 95 (1993). Although it is preferable for the court "to address each element of the alleged perjury in a separate and clear finding," a finding "that encompasses all of the factual predicates for a finding of perjury" is sufficient. *Id.*

We conclude that there is no merit to Mr. Carter's contention that the district court did not make adequate findings here. The court stated during the sentencing hearing that it found "that Mr. Carter ... testified falsely as to all these different sexual assaults, all of which was testimony on material matters." The judge added that he was "making that finding based upon what I saw and heard at trial." At another point, the judge stated that the evidence in Mr. Carter's case was "as strong as [he'd] seen in

-6-

any case" during nine years on the bench and that he would have found Mr. Carter guilty in a bench trial.

In *Dunnigan*, the Court concluded that the district court's findings that *"the defendant was untruthful at trial with respect to material matters "* and that the defendant's "failure to give truthful testimony on material matters ... *were* [sic] *designed to substantially affect the outcome of the case"* were sufficient to support the enhancement. *Id.* (emphasis in *Dunnigan*). The district court undoubtedly made independent findings in Mr. Carter's case, and we believe that the court's statements are substantially similar to those that we have previously concluded are sufficient. *See, e.g., United States v. Kessler*, 321 F.3d 699, 703 (8th Cir. 2003).

Finally, we note that Mr. Carter mistakenly relied in his brief on *United States v. Cabbell*, 35 F.3d 1255, 1261 (8th Cir. 1994) (quoting *United States v. Willis*, 940 F.2d 1136, 1140 (8th Cir. 1991), *cert. denied*, 507 U.S. 971 (1993)), for the proposition that an obstruction-of-justice enhancement should not be imposed based upon a defendant's testimony " 'if a reasonable trier of fact could find the testimony true.' " This statement, first made in *Willis*, 940 F.2d at 1140, was based directly on an application note to U.S.S.G. § 3C1.1 (n.1) (1990) that required a sentencing court to evaluate any suspect testimony or statements in the light most favorable to the defendant when determining whether he or she had committed perjury. But the Sentencing Commission amended that application note in 1997 "so that it no longer suggests the use of a heightened standard of proof," U.S.S.G. app. C, amend. 566, and thus there was no longer a basis for our statement in *Willis*. Rather than viewing the evidence favorably to the defendant or to the verdict, the district court now makes independent findings based on a preponderance of the evidence, and we review those findings for clear error only. *See United States v. Guel-Contreras*, 468 F.3d 517, 522 (8th Cir. 2006). Understandably, Mr. Carter does not contend here that the findings of the district court are clearly erroneous.

### III.

For all of the above reasons, we affirm the judgment of the district court.

BYE, Circuit Judge, concurring in part and concurring in the judgment.

I join in Part II of the majority's opinion and its judgment. I also agree with Part I to the extent the majority recognizes Carter cannot now assert his *ex post facto* challenge because he did not raise it at resentencing. I write separately because I disagree with the majority's view, expressed in Part I, that Carter could have raised the challenge at his first sentencing or in his appeal from that sentence.

At Carter's resentencing, the district court applied the 2001 Guidelines, citing the conduct in Count VII (Resentencing Tr. at 34) and Count II (Resentencing Tr. at 39) as the basis for their application. Carter objected, arguing the 2000 Guidelines should be used but in doing so merely "restate[d]" the objection raised at the first sentencing—that the Count VII conduct occurred before the 2001 Guidelines' November 1, 2001, effective date. Carter did not argue at resentencing, as he does in this appeal, that, regardless of when committed, the conduct in *Count II* could not be used to apply U.S.S.G. § 4B1.5(b)(1) to grouped Counts IV, V, and VI. Thus, Carter forfeited the *ex post facto* challenge he raises for the first time in this appeal and, as it is committed to our discretion, the majority appropriately declines to review the challenge for plain error. See Gendron v. United States, 295 F.2d 897, 902 (8th Cir. 1961) ("The normal rule is that an appellate court should not consider questions which have not been properly raised in the trial court and upon which the trial court has had no opportunity to pass.").

But I am not as convinced as my colleagues it is reasonable to hold Carter's failure to raise his *ex post facto* challenge at the *first* sentencing or in his *first* appeal against him. At his first sentencing, the district court applied the 2001 Guidelines because it determined the offense charged in Count VII occurred after their effective

-8-

date. Believing the evidence showed the conduct charged in Count VII occurred in August or September of 2001, Carter appealed, arguing the district court violated the *ex post facto* clause of the Constitution by applying § 4B1.5(b)(1), which was not in effect when he committed Count VII. We *agreed* with Carter "[t]he evidence relevant to Count VII that was offered at trial pertained to an incident that occurred in August or September of [2001]." United States v. Carter, 410 F.3d 1017, 1025 (8th Cir. 2005). Still, we affirmed the application of the 2001 Guidelines, finding, *sua sponte*, the conduct charged in *Count II* might have occurred after November 1, 2001, stating, "[W]e cannot conclude that . . . the district court clearly erred in determining that the defendant perpetrated at least one of his offenses after the effective date of § 4B1.5(b)(1)." Id. at 1027.

The relevance of the timing of the conduct charged in Count II arose "out of the correction of the sentence" and was "made newly relevant by [our] decision—whether by the reasoning or the result." United States v. Lee, 358 F.3d 315, 326 (5th Cir. 2004). In other words, the relevance of the timing of the conduct in Count II "became extant as a consequence of our mandate." Id. Since the district court only referenced Carter's Count VII conduct in applying the 2001 Guidelines at the first sentencing, it was not in Carter's interest to point out to the district court the Count II conduct might be an alternative basis for applying the 2001 Guidelines but argue such an application would violate the *ex post facto* clause for the reasons stated in this second appeal. This is especially true here, where Carter's counsel would likely have violated her professional obligation to zealously and competently advocate Carter's position had she volunteered to the district court another means to increase his sentence. See S.D. Rules of Prof'l Conduct preamble ("As advocate, a lawyer zealously asserts the client's position under the rules of the adversary system."); Id. Rule 1.1 ("A lawyer shall provide competent representation to a client."). Even if she believed the conduct in Count II occurred after the effective date of the 2001 Guidelines (the opposite

appears to be true), I do not think her candor obligation required her to hang her client. Nonetheless, I concur in the ultimate outcome of this case for the reasons given.

---